(84 N. W. Rep. 379.)

---

GEORGE S. MONTGOMERY, AS RECEIVER, *vs.* W. H. HARKER.

Opinion filed October 25, 1900.

**Mutual Insurance—Applications for Membership.**

The securing of applications for membership and insurance in a purely mutual insurance company to a certain number and amount is required by section 3104, Rev. Codes, as a pre-requisite to the existence of the right to issue policies, and also to the right of the commissioner of insurance to issue the certificate of authority to do business, authorized by section 3090, Id. The taking of such applications is a necessary step in the formation of the corporation and is required to be done prior to the issuance of a certificate from the commissioner of insurance authorizing such corporation to commence business, and is not in violation of the provisions of the statute prohibiting the doing of an insurance business without such certificate.

**Payment of Annual Sum When No Assessment Made—Credit.**

Where a member of a mutual insurance company has obligated himself to pay such annual assessments as shall be made, not to exceed a specified sum each year, and in anticipation of an annual assessment pays to the treasurer the amount of an annual assessment in advance, and such assessment is not in fact made, the sum so paid stands to his credit, and he has a right to apply the same on an assessment for a succeeding year.

Appeal from District Court, Richland County; *Lauder,* J.

Action by George S. Montgomery, receiver of the Red River Valley Mutual Hail Insurance Company, against W. H. Harker. Judgment for plaintiff. Defendant appeals.

Reversed.

*Redmon, Ink & Wallace,* for appellant.

Persons claiming to have organized themselves into a corporation under the general law are not free from having their claim attacked collaterally when no articles of association are filed. *Abbott* v. *Omaha Smelting Co.,* 4 Neb. 416; *Childs* v. *Smith,* 55 Barb. 45. The corporation is deemed to exist from the time the certificate of incorporation prescribed by statute is issued. Thereafter the lawfulness of the existence of the corporation cannot be denied in any controversy, except in an action by the state to vacate its franchise. *Palmer* v. *Lawrence,* 3 Sand. 161; *Hunt* v. *Kansas-Missouri Bridge Co.,* 11 Kan. 412; 1 Thomp. Corp. § 219. There is a difference where a corporation is existing by special charter and there have been acts of user and where individuals seek to form themselves into a corporation under the provisions of a general law. In the latter case it is only in pursuance of the statute for such purposes that the corporate existence can be acquired. *Bigelow* v. *Gregory,* 73 Ill. 194, 201. The existence of a corporation formed under the general law must be proved by showing at least a substantial compliance with the statute. *Mokelumne Mill Co.* v. *Woodbury,* 14 Cal. 424; *Bigelow* v. *Gregory,* 73 Ill. 197; *Union Ins. Co.* v. *Cramer,* 43 N. H. 641; *Harris* v. *McGregor,* 29 Cal. 124; *Abbott* v. *Omaha Smelting Co.,* 4 Neb. 416; *Granby Mining Co.* v. *Richards,* 95 Mo. 106; *Kaiser* v. *Lawrence Savings Bank,* 56 Ia. 104; *Gent* v. *Manufacturers, Etc., Ins. Co.,* 107 Ill. 652. The taking by appellants of premium note and mortgage was doing an insurance business within the meaning of the state. §§ 3124 and 3131, Rev. Codes. The doing of such business was illegal. *State* v. *Hogan,* 8 N. D. 301, 78 N. W. Rep. 1051, and that consequently appellants' note and mortgage are void.

*W. E. Purcell,* for respondent.

Respondent's assignments of error are insufficient under Rule XII, Supreme Court Rules. *Henry* v. *Maher,* 6 N. D. 415; *Thompson* v. *Cunningham,* 8 N. D. 106; *Globe Investment Co.* v. *Boyum,* 3 N. D. 538; *O'Brien* v. *Miller,* 4 N. D. 308. All objections to the evidence in this record may be disposed of together. There are no objections. This case is another illustration of the fearful consequences of becoming addicted to the "incompetent, irrelevant and immaterial" all strung together habit, the appetite for which once acquired seems beyond cure. *Kolka* v. *Jones,* 6 N. D. 461. The question of the regularity of this incorporation was for the state. It has recognized the corporation by the issuance of its license to transact

business of insurance. Taylor on Corp. § 145; *Freeland* v. *Ins. Co.*, 94 Pa. St. 504; *Frost* v. *Company*, 24 How. 278. The state, which alone can incorporate, may waive the breach or acquiesce in the usurpation, the wrong being to the state and not to the individuals. *Lehman, Dore & Co.* v. *Warner*, 61 Ala. 455; *Bakersfield Ass'n.* v. *Chester*, 55 Cal. 99; *Humphrey* v. *Money*, 5 Colo. 282. Defendant was a promoter and member of this corporation. Having dealt with the corporation as existing in fact, he is estopped to deny as against the corporation that it has been legally organized. *Close* v. *Glenwood Cemetery*, 107 U. S. 466, 477; *McLynch* v. *Sturgess*, 32 Me. 288; *Battelle* v. *Northwestern Cement, Etc., Co.*, 33 N. W. Rep. 327; 4 Am. & Eng. Enc. L. 199. All the members of this company being co-insurers, and the deeds and obligations of contracts being mutual, the defendant cannot plead such failure in an action against him to enforce his liability as co-insurer. *Washburn Mill Co.* v. *Bartlett*, 3 N. D. 138, 54 N. W. Rep. 544; *Whitney* v. *Wyman*, 101 U. S. 392.

YOUNG, J. The plaintiff is the receiver of the Red River Valley Mutual Hail Insurance Company of North Dakota, a domestic insurance company organized in April, 1898, under chapter 14 of the Civil Code, with principal place of business at Wahpeton. Plaintiff was appointed receiver by the District Court of Richland county on December 29, 1899, in an action instituted in that court by the commissioner of insurance of this state, and immediately thereafter took possession of the assets of said corporation. A large portion of the assets consists of assessments levied upon the members of the corporation by the directors, some 1,800 in all, and which plaintiff claims are unpaid. But one assessment was made. That was levied on September 11, 1899, and was 5 per cent. of the face amount insured by each policy. This defendant had a five-year policy for $300, and this action is to collect $15 assessed against him on such policy. The case was tried in the District Court without a jury. The court found for the plaintiff, and judgment was entered in accordance therewith. Defendant appeals from the judgment, and in a settled statement of the case embodying all of the evidence offered demands a trial anew of the entire case in this court. The evidence in the record is of considerable volume, and in some particulars is conflicting, but as to all facts which are decisive there is no conflict. The following facts are all that are material to a determination of the issues: On February 10, 1898, seven persons, residents of the city of Wahpeton, executed articles of incorporation for the purpose of organizing the aforesaid corporation under chapter 14 of the Civil Code of this state. On February 23, 1898, said articles were approved as to form by the attorney general, and filed in the office of the commissioner of insurance, and on the same day, to-wit: April 23, 1898, the commissioner of insurance issued his certificate, reciting that said company had fully complied with all of the requirements of the

insurance laws of the state relating to said company, and that it was authorized to transact a hail insurance business from and after the date of such certificate.  A certified copy of the articles of incorporation, together with a copy of the certificate of authorization, was filed and recorded in the office of register of deeds of Richland county on April 29, 1898.  On March 1, 1898, the defendant signed and delivered to one H. F. Meeker a partly written and partly printed application for insurance in said company, which application stated that the amount of insurance desired was $300, and for a period commencing March 1, 1898, and ending January 1, 1903, and gave the description of the lands to be covered by the policy. The application also contained the following: "I hereby apply for membership and insurance in the above-named company, and agree to pay all just assessments, not to exceed five per cent. of the face value of my policy or ——— dollars, per annum, to be governed by the articles of incorporation and by-laws of the company."  On the same day, and as part of the transaction, the defendant delivered to Meeker a note in the following language: "On or before the first day of October, 1898, I promise to pay to the Red River Valley Mutual Hail Insurance Company of North Dakota the sum of fifteen and no-100 dollars, or such portion thereof as may be assessed on my policy by the officers of said company for payment of expenses and losses by hail according to the by-laws, rules, and regulations of said company, with interest at the rate of 8 per cent. per annum from the maturity hereof."  This was secured by a chattel mortgage upon the crops to be insured, and was paid by the defendant to the corporation in full prior to the making of an assessment.  In fact, no assessment was made in 1898, or other than that now sued on.  About the 10th of May, 1898, a policy was issued and delivered to the defendant, corresponding with the application, and reciting that it is based upon his application.  On the back of the policy there is printed a notice of the date of the annual meeting, and notice that by virtue of the policy the defendant is a member of the corporation.  The articles of incorporation and by-laws are also printed thereon.  On the back, too, these words appear, "Total liability of assessment, $15." Section 6 of the bylaws provides that "any person wishing to become a member of this company shall sign an application containing an agreement to pay all just assessments, and shall give security for the same, as shall be required by the board of directors; provided, said sums do not exceed five per cent. of the amount insured, and as governed by the by-laws of the company and its articles of incorporation.  He shall pay a membership fee of $2."  Section 17 provides that "there shall be but one assessment each year, and that for only such sums as may be required to pay the losses and expenses of the business done by the company."  Another section provides a method for transferring the policy to other property, and another provides for cancellation of policies.  Meeker did not have a certificate of authority from the commissioner of insurance, as provided for in section 3124, Rev. Codes, when he took the defendant's appli-

cation; neither was the corporation then authorized to do an insurance business. On September 11, 1899, the directors ordered an assessment of 5 per cent. upon the policy holders of the company, and due notice of such assessment was served on this defendant. There were some 170 unpaid losses for 1899, and an assessment was necessary to pay such losses. Do these facts establish the defendant's liability for the assessment demanded. He says not, and presents two reasons, which we shall now consider.

First, he contends that the policy upon which plaintiff predicates his right to recover is void. This contention is based upon the fact that Meeker, who took defendant's application, did not have a certificate of authority as required by section 3124, Id.; and upon the further fact that no certificate of authorization had at that time been issued by the commissioner of insurance, authorizing such corporation to do an insurance business. Briefly stated, his contention is that in procuring the defendant's application, without such precedent authority, the corporation, through its agent, was doing or attempting to do an insurance business contrary to the prohibitions of the laws of this state relative to doing insurance business, and he concludes therefrom that not only is the application void, but that the policy thereafter issued on such application is also void, and accordingly furnishes no basis for any legal liability. We have occasion to notice this position only to the extent of pointing out the reasons why, in our view, counsel is in error in claiming that the taking of the application by Meeker, without a certificate of authority, was in violation of the statute. The corporation in question is a domestic mutual insurance company. Article 4 of chapter 14 of the Civil Code, under which it was organized, relates exclusively to this class of corporations. The first section contained in article 4, § 3104, Rev. Codes, provides that: "No policy shall be issued by a purely mutual insurance company until not less than two hundred thousand dollars of insurance in not less than one hundred separate risks have been subscribed for and entered on its books." Section 3090, Id., provides that the commissioner of insurance shall, after the attorney general has approved the form of the articles of incorporation, "make an examination to ascertain whether the company has in all respects complied with the requirements of law, according to the nature of the business proposed to be transacted by it, and if satisfied by such examination that the corporation has complied with the law he shall deliver to such corporation a certified copy of the articles of incorporation and a certificate to the effect that such corporation has complied with all the requirements of the law, which on being filed in the office of the register of deeds of the county where the principal office of the corporation is located, shall be its authority to commence business and issue policies; and such certified copy of such articles of incorporation and of such certificate may be used for or against such company with the same effect as the original, and shall be conclusive evidence of the fact of the organization of such corporation." Elsewhere in article 4 it is

provided that every policy-holder is a member of the corporation while his policy is in force (section 3105, Rev. Codes), and is entitled, when his policy expires, to a share of the net profits or surplus earned while his policy was in force; and is in like manner liable to pay his proportionate share of assessments levied by the company, in accordance with law and his contract, for losses and expenses incurred while he was a member. Id. § 3110. From the sections of the statute above quoted it will be seen that the corporation had no existence prior to the issuance of the certificate of authorization by the commissioner of insurance, which occurred on April 23, 1898. Prior to that time, of course, it could accordingly have neither officers nor agents. Up to that time all persons connected with the proposed corporation were merely promoters, proposed officers, or proposed members. One of the chief requirements of the statute to be performed before a single policy can issue is that a certain number of policies and a certain amount of insurance shall be subscribed for. This had to be obtained not only before a policy could issue, but also before the commissioner of insurance could issue a certificate of authority to do an insurance business; for his certificate is unconditional, and authorizes the issuance of policies. Plainly, this condition that the requisite amount of insurance shall have been subscribed is one which the commissioner is required to examine into before he makes his certificate. The procuring of such subscription in the form of applications for insurance and membership, such as the defendant executed, is, then, not prohibited, but is expressly authorized, by the statutes relating to the organization of this class of corporations, and does not constitute the doing of insurance business. Then, too, Meeker was not its agent. The corporation did not then exist. The defendant acted for himself in making application for membership and insurance in the contemplated corporation. After the certificate of authorization was issued, the corporation had an existence, and was authorized to do an insurance business. Prior to that time all acts done were those of individuals, and not those of the corporation, and related to the organization of the corporation. The defendant, in pursuance of his application for membership, received a policy. This was after the commissioner of insurance had issued his certificate of authority. By receiving and retaining such policy, the defendant became a member of such corporation, and subjected himself to lawful assessments for losses and expenses accruing during the life of his policy. The objection that the taking of defendant's application, which is in the nature of a subscription for insurance and membership, was doing an insurance business in violation of the statute is without merit.

But defendant claims that, in any event, he is not liable for the assessment sued on, for the reason that his entire legal liability to such corporation was discharged by the payment of the $15 note before referred to, which sum so paid represented the highest and only sum he could, under his policy, be assessed for in any one year. Before considering this claim, it will be necessary to refer to sec-

tion 3108, Rev. Codes, which prescribes what payments shall be required from members of this class of corporations for indemnity afforded against losses. This section reads: "Mutual insurance companies shall charge and collect upon their policies the full mutual premium in cash or notes absolutely payable and may in their by-laws fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by their cash funds; provided, that such contingent liabilities of a member shall not be less than a sum equal to and in addition to the cash premium written in his policy. The total amount of the liability of a policy-holder shall be plainly and legibly stated upon the back of each policy." The language of the section just quoted is unambiguous, and plainly requires the corporation to charge and collect a fixed premium from each of its members. This may be cash in advance, or a note payable absolutely. But it is an absolute and unconditional payment; a premium, in fact; and is to be written in the policy. The funds derived from such premium constitute a cash fund subject to be used for the payment of losses and expenses. As to the further liability of the members for losses and expenses not provided for by such cash fund, the corporation is authorized to fix a limit, but is prohibited from making such contingent liability less than the amount of the cash premium. Such contingent lability is clearly in addition to the cash premium, and up to the limit fixed by the corporation, which in this case was 5 per cent. of the face of the policy, is entirely dependent upon a failure of the cash fund derived from absolute premiums to cover the amount of the expenses and losses of the corporation. If our interpretation of this section requires support, it will be found in the two succeeding sections, 3109 and 3110, which provide for the disposition of such surplus funds as might possibly accumulate from the payment of cash premiums. The statute plainly provides for a double liability. The first is absolute, namely, the cash premium fixed by the corporation, either in the form of cash paid in advance, or a note payable absolutely; the second, a contingent liability, also to be fixed by the corporation, but at an amount not less than the cash premium. The manifest purpose of requiring such corporations to charge and collect a full mutual premium is to protect the public against worthless insurance, and to afford to persons effecting insurance on the mutual plan adequate and reliable indemnity for losses. If the above requirement is complied with, the policy-holder does net have to look alone to the contingent liabilities of the other members, which are at best of uncertain value, for the payment of his loss, but has a definite and existing fund, accumulated either from cash exacted in advance or from notes payable absolutely. The record in the case at bar shows that this provision was entirely disregarded by this corporation, not only in its contract with this defendant, but it appears that no attempt at compliance with such requirement was made in any instance. No premium was fixed. The by-laws show that the extent of the promise exacted from members was that they would be liable

for an annual assessment of 5 per cent. on the face of the policies in case they should be necessary to pay losses and expenses. That is the extent of the promise made by this defendant. It is entirely clear that no liability became fixed, or legal demand against the defendant became absolute, until an assessment was made. An examination of the note executed by the defendant will show that it added nothing to the defendant's liability. In it he merely agreed to pay in pursuance of an assessment up to $15, and that is just what he was obliged to do by the by-laws, which constituted a part of his contract. The promise to pay anything on the note was altogether contingent on an assessment. No assessment was made for 1898, or any assessment other than the $15 assessment here involved. Does the fact that defendant paid to the treasurer of the company the sum which is now sought to be recovered before an assessment was made defeat plaintiff's right to recover? We think it does. When it was paid, the corporation had no legal claim against him. It was evidently paid in anticipation of an assessment for that amount for 1898. Had such an assessment been made, it certainly would have been applied in payment of it. But there was no assessment until 1899. During this time the money stood on the books of the corporation to the credit of the defendant, and he certainly had the undoubted right to insist, as he does, that it be applied on the assessment now sued on. For authorities holding that assessments paid in advance, or in excess of those legally levied, shall be credited on assessments subsequently made, see *Association* v. *Baldwin,* 49 Ill. App. 203; *Davis* v. *Parcher & J. A. Steward Co.,* 82 Wis. 488, 52 N. W. Rep. 771; *Insurance Co.* v. *Jarvis,* 22 Conn. 133; *McGowan* v. *Association,* 76 Hun. 534, 28 N. Y. Supp. 177; 2 Joyce, Ins. § 1262. We have assumed, for the purposes of this decision, without deciding the question, that the policy is valid, and that the assessment was legal. Even in that event, for the reason just stated, the plaintiff cannot recover. The judgment of the District Court is reversed. All concur.

### ON PETITION FOR REHEARING.

A rehearing and reargument is requested in this case by respondent upon the ground that our decision was made upon "a misapprehension of the facts adduced in evidence and considered by the trial court." The petition is accompanied by a written stipulation signed by counsel for both parties to the effect that an assessment was in fact made for the year 1898, and that evidence of that fact was introduced at the trial in the District Court. The stipulation recites that the omission to include the same in the statement of case transmitted to this court was due to an oversight on the part of counsel for the appellant and respondent. Both parties request this court to consider the record as "amended and added to" so as to show the fact of the assessment, and also certain other facts, and ask us "to decide the said cause upon the merits as included in the entire record as so made" Briefly stated, we are requested to do two things: First, to permit the introduction of evidence in this court originally,

which is not certified here by the trial court; secondly, to retry the case upon the record as so added to. Neither request can be granted. The records upon which this court acts in the exercise of its appellate jurisdiction are made by the District Court, and it does not lie within the power of counsel or of this court to alter such records. The language of the Supreme Court of Nebraska in *Hoagland* v. *VanEtten,* 43 N. W. Rep. 422, is directly applicable. The court said: "The duty of settling bills of exception is imposed on the judge of the District Court before whom the cause was tried, and the Supreme Court must accept the bill certified to as correct. This court, in the exercise of its appellate jurisdiction, can take no action looking towards a correction of bills of exception wherein mistakes of the kind referred to in this motion and affidavit are alleged to have occurred. That duty devolves upon the judge of the District Court." In *Thuet* v. *Strong,* 7 N. D. 566, 75 N. W. Rep. 922, this court held "that the action of the court with respect to a review of a case cannot be controlled by counsel who, in a given case, see fit to ignore the statute and rules of court governing the settlement of statements of the case and the preparation of abstracts." Upon a proper showing and a timely application this court will transmit records to the District Court for correction. As was said in *Baumer* v. *French,* 8 N. D. 319, 79 N. W. Rep. 340, "Under certain circumstances the practice of sending down a record for amendment is entirely proper." See *Moore* v. *Booker,* 4 N. D. 543, 62 N. W. Rep. 607, and court rule 33 (74 N. W. Rep. xii). But the right to have the record sent back is not an absolute one. In *Coulter* v. *Railway Co.,* 5 N. D. 568, 67 N. W. Rep. 1046, the court, speaking through Corliss, J., said that: "After a case has been submitted to this court on the merits, and the work of investigation has commenced, parties will not be allowed the privilege of amending the record, except on condition of making a very satisfactory showing; and that showing must be made in this court, and this court will in all such cases determine whether, under the circumstances, the record should go back for correction." In this case we do not have occasion to decide whether, in any case, such correction can be made after decision filed. No request is made to remand the record to the District Court, where this power to correct alone exists. Respondent is content with asking an amendment at the hands of this court. This, of course, cannot be granted, and the petition for a rehearing must therefore be denied.

The real purpose of the request for a reargument and amendment of the record is to secure a decision on such questions as shall be decisive of the liability of some 1,300 other policy-holders in the defunct insurance company. Such a result, we can readily see, would be highly advantageous to respondent in his further duties as receiver. The questions involved, however, are of such importance that we cannot, with propriety, enter on a discussion thereof until they arise in an orderly and regular way.