C. B. BACH, Executor of the Estate of W. L. Millar, Deceased, Appellant, v. NORTH DAKOTA MUTUAL FIRE INSURANCE COMPANY OF NORTH DAKOTA, a Domestic Corporation, Respondent.

(217 N. W. 273.)

**Insurance — domestic mutual insurance company — member — policy subject to statutes.**

1. Under § 4871 of the Compiled Laws of 1913, every person insured by a domestic mutual insurance company, other than life, is a member of the company while the policy is in force, and the policy, so far as its validity is concerned, is subject to the statutory provisions governing the relations between mutual insurance companies and their members.

**Insurance — mutual fire insurance policy — mortgage clause — subject to statutes.**

2. Where a mutual fire insurance policy cofitains a standard mortgage clause under which the loss, if any, is payable to a mortgagee and which provides that in case the mortgagor or owner shall neglect to pay the premium the mortgagee.

---

Note.— (1) As to liability of members of mutual fire insurance companies, see annotation in 32 L.R.A. 481; 14 R. C. L. pp. 847, 848.

will pay the same, the insurance contract is subject to the provisions of § 4874 of the Compiled Laws of 1913, prescribing the effect of the failure to pay premiums as required.

**Insurance — mutual fire insurance policy — void during period of nonpayment of premiums.**

3. Following Montgomery v. Harker, 9 N. D. 527, 84 N. W. 369, Montgomery v. Whitbeck, 12 N. D. 385, 96 N. W. 327, and J. P. Lamb & Co. v. Merchants Nat. Mut. F. Ins. Co. 18 N. D. 253, 119 N. W. 1048, it is held that § 4874 of the Compiled Laws of 1913 renders void, during the period of nonpayment of premium, a policy of mutal insurance upon which the full premium has not been paid in cash or notes.

**Insurance — mutual fire insurance policy — void by statute for nonpayment of premium — void as both member owner and mortgagee.**

4. A mutual insurance policy declared void by statute for nonpayment of premium by a member is void as to both the owner-member and to a mortgagee.

Opinion filed January 14, 1928.

Fire Insurance, 26 C. J. § 346 p. 274 n. 96.   Insurance, 32 C. J. § 67 p. 1019 n. 42; § 531 p. 1302 n. 4.

Appeal from the District Court of Ward County, *Burr*, J. Affirmed.

*John H. Lewis,* for appellant.

*Ritchie & Ployhar,* for respondent.

BIRDZELL, Ch. J.   This is an action brought by a mortgagee to recover for a loss sustained by the destruction of premises upon which the defendant, a mutual insurance company, organized under the laws of this state, had issued a policy, containing a loss payable clause in favor of the mortgagee.   From a judgment in favor of the defendant the plaintiff has appealed.   The case was tried before the Honorable A. G. Burr, a judge of the district court, now a member of this court. The facts and the view of the law which was considered controlling are sufficiently stated in a memorandum decision of Judge Burr, as follows:

"The plaintiff in this case made a loan to one David Houston, Jr. and to secure the payment of the amount of indebtedness Houston gave the plaintiff a mortgage upon real estate in this county and as part of

the terms of said mortgage agreed to 'keep the buildings erected and to be erected upon the above described premises insured against loss and damage by fire in an amount approved by the party of the second part (Millar)—said policy of insurance to be, loss, if any, made payable to said second party. . . .' There is nothing before the Court to show what amount of policy the plaintiff required but the said Houston applied for an insurance policy from the defendant in the sum of $300 and the defendant issued the insurance policy involved in this case. It is stipulated that the defendant never received any premium for this policy, and notified the said Houston that the premium had not been paid. It is stipulated, also that the said Houston had mailed the premium to the defendant, but the defendant not receiving the premium entered a notation on its records to the effect that this policy was not in force. The policy was issued under the provisions of Section 4874 of the Code, and other sections, dealing with domestic mutual insurance companies. In accordance with the agreement made between the plaintiff and Houston the defendant attached to its policy what is known as 'North Dakota Standard Policy, Mortgage Clause with full contribution,' which clause contains the following provisions, among others, 'This insurance, as to the interest of the mortgagee only, therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property;' 'in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee shall on demand pay the same;' and, 'this company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation and then cease, and shall this company shall have the right on like notice to cancel this agreement.' Evidently this latter clause means 'also,' or similar word for one of the 'shalls.' It is stipulated that the company did not give the plaintiff ten days notice of intention to cancel the contract of insurance. The plaintiff claims that as between him and the defendant the policy was in force at the time the loss occurred.

"Plaintiff had entered into a contract with Houston whereby Houston was to furnish a policy of insurance. In compliance with this part of his mortgage contract Houston tenders the insurance policy in issue. Whether this policy so tendered was a compliance with his mortgage

56 N. Dak.—21.

contract was a matter between the plaintiff and Houston. In any event Houston tendered this form of contract and it was the duty of the plaintiff to know just what kind of an insurance policy he was getting. Whether he actually knew the facts and their legal effect is immaterial. He knew the mortgagor tendered a policy in a Domestic Mutual Insurance Company. He knew that, in accordance with the provisions of the statute, in case the premium was not 'paid in cash or unconditioned notes within sixty days from the date of issue, the policy shall become and be absolutely void and to remain void during the non-payment of such fee, and upon payment of the premium as above provided such policy shall reattach.' The plaintiff, therefore, knew that in order to have a valid policy of insurance in this company it was necessary, not only to have a policy issued, but also to have the premium paid within sixty days from the date of issue. It was his duty to know and see that the premium was paid if he was going to accept this policy as a compliance with the mortgage contract. To make the policy of insurance complete there had not to be only the issuance of a policy but also the payment of the premium. In other words, Houston never really tendered a policy of insurance upon which the plaintiff could recover. It never had life. It is not a case of a living policy lapsing. It is not a case of a valid policy being in existence and thereafter some occasion would arise whereby the company had the right to cancel. In such case notice of intent to cancel would be given to the mortgagee. Neither are we concerned with what might have been the effect in case the loss had occurred within sixty days after the date of the policy contract. The loss occurred long after.

"The mortgagor had agreed to enter into an insurance contract for the benefit of the mortgagee; he submitted to the mortgagee a purported policy which had printed thereon a copy of the statute relative to the payment of the premium; the mortgagee is bound to know that this policy is not good, and therefore the mortgagee clause of no effect, unless the premium is paid, and the payment of the premium was not prevented by the defendant. This is not a case where the mortgagor and the defendant enter into a contract for the purpose of aiding the mortgagor to carry out his contract with the mortgagee. The defendant is not bound by any agreement between the mortgagor and mortgagee to give the mortgagee, the plaintiff, a valid policy of insurance. The

defendant is bound by its own contract only, and the laws governing the same. It is immaterial to the defendant whether the policy of insurance tendered was such as the plaintiff had the right to demand from the mortgagor. It was upon the mortgagor that the mortgagee relied to get a valid policy of insurance, not the defendant. If the plaintiff risked his right to an insurance policy on the supposition that the mortgagor would pay the premium, that was his risk. This is not a case where the policy was issued as an inducement for him to enter into the mortgage contract.

"It is true the mortgagee clause says that 'the interest of the mortgagee shall not be invalidated by any act or neglect of the mortgagee.' This must mean any 'act or neglect' after the policy is in force—not an essential act to give the policy life. There are plenty provisions in the policy which might be neglected by the insured, the mortgagor, and his failure therein would not militate against the mortgagee. It should not. The mortgagee should not be bound to see that all of these provisions were carried out; but he is bound to know whether he has a valid policy or not. The officers of the company cannot waive the requirements of the statute. The principles governing mutual insurance companies differ from those governing old line companies, particularly the relation between the insureds.

"The court is of the opinion that the plaintiff cannot recover in this case. Counsel for the plaintiff, in their brief say, they do not wish 'to be understood as waiving the claim of substantial payment of premium.' Just what is meant by this does not appear. There is no argument as to the effect of the mailing of the premium and its nonreceipt by the defendant.

"Counsel for plaintiff argue strenuously that 'policies certainly could not be invalidated unless they were then valid.' They also argue that this mortgagee clause is in effect a contract between the plaintiff and the defendant, and that the defendant is estopped from showing it never had life. I know that many a time the word 'void' is used when it is merely meant 'suspended,' and it may be difficult at times to see how a policy could be 'absolutely void' and then 'such policy shall re-attach' upon payment of the premium after sixty days; but the statute says this policy that is issued without the payment of the premium in sixty days shall 'become and be *absolutely void and, to remain void*

during the nonpayment of such premium.' That was part of the policy, printed on the policy. The mortgagee knew this policy was no good unless the premium was paid. It was not a case of lapsing; it was a case of life. Our conclusion is there never was a policy of insurance of validity to make this mortgagee clause effective and the defendant may draw his findings in conformity with this opinion."

The contention of the appellant upon this appeal is that the effect of attaching a mortgage clause to the policy in question was to make a new and separate contract between the mortgagee and the insurance company, to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issuance of the mortgage clause.

Supplementing the above memorandum opinion, we will refer more at length to the statutes regarded by the trial judge as conclusive and to decisions of this court. Article 11 of chapter 18 of the Civil Code contains provisions peculiar to domestic mutual insurance companies. Section 4871 provides that "Every person insured by a domestic mutual insurance company, other than life, shall be a member while his policy is in force, entitled to one vote for each policy he holds, . . ." Section 4874, in full, reads:

"Mutual insurance companies shall charge and collect upon their policies the full mutual premium in cash or notes, and may by their by-laws fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by their cash funds; provided, that such contingent liability of a member shall not be less than a sum equal to, and in addition to the cash premium written in his policy; provided, further, and in case said premium be not so paid in cash or unconditional notes within sixty days from the date of issue, the policy shall become and be absolutely void and to remain void during the nonpayment of such premium, and upon payment of the premium as above provided, such policy shall reattach; provided, there has been no loss while the policy was void. The total amount of the liability of a policy holder shall be clearly and legibly stated upon the back of each policy."

We think it clear from the provisions of § 4871 that mutual insurance companies are authorized to insure only the property of their members and that any insurance contract with a member whereby mortgagees or third parties acquire an interest in the insurance is subject to all limitations that would exist were such third party a member or between the company and a member; in other words, that a member of a mutual insurance company cannot contract with the company in such a manner as to vest in third parties rights against the company that such member himself is precluded under the statute from acquiring or enjoying. Hence, we are of the opinion that the provision of § 4874 of the statute, which renders a policy void in case the premium be not paid in cash or unconditional notes within sixty days from the date of issue, to remain void during the nonpayment of the premium, is applicable as well to a mortgagee as to an owner. To hold that it is not applicable to the mortgagee would be in effect to hold that a mutual insurance company could contract a liability upon the policy in favor of a mortgagee that it is expressly forbidden to contract in favor of an owner. It would then cease to be a mutual company.

In several cases this court has had occasion to consider a similar statute, § 3108, Revised Codes of 1899, the forerunner of the present statute. In Montgomery v. Harker, 9 N. D. 527, 84 N. W. 369, in referring to § 3108, supra, this court said:

"The language of the section just quoted is unambiguous, and plainly requires the corporation to charge and collect a fixed premium from each of its members. This may be cash in advance, or a note payable absolutely. But it is an absolute and unconditional payment; a premium in fact; and is to be written in the policy. The funds derived from such premium constitute a cash fund subject to be used for the payment of losses and expenses. . . . The manifest purpose of requiring such corporations to charge and collect a full mutual premium is to protect the public against worthless insurance, and to afford to persons effecting insurance on the mutual plan adequate and reliable indemnity for losses. If the above requirement is complied with, the policy-holder does not have to look alone to the contingent liabilities of the other members, which are at best of uncertain value, for the payment of his loss, but has a definite and existing fund, accumulated either from cash exacted in advance or from notes payable absolutely."

In Montgomery v. Whitbeck, 12 N. D. 385, 96 N. W. 327, at pages 390 and 391 of the state report, the court said:

"One who accepts a policy of insurance in a mutual insurance society organized under the provisions of chapter 14 of the Civil Code thereby becomes a member of the society, and must take notice of the terms of the contract to which he is a party. The statute under which the corporation is organized, the articles of incorporation, and the by-laws are made to contain the whole plan of insurance, its limitations, extent, and the obligations imposed. They embrace the terms of the contract. Whatever vitality the policy of insurance possesses is derived from these sources. The statute authorizing and controlling the organization and business of this society became as much a part of the contract for insurance and membership as if its terms were incorporated into the printed certificate, and every person becoming a member was bound to take notice of it. Niblack, Mut. Ben. Soc. 271, 272; Smith v. Sherman, 113 Iowa, 601, 85 N. W. 747; Davidson v. Old People's Mut. Ben. Soc. 39 Minn. 303, 1 L.R.A. 482, 39 N. W. 803; Gent v. Manufacturers' & M. Mut. Ins. Co. 107 Ill. 652; Simeral v. Dubuque Mut. F. Ins. Co. 18 Iowa, 322; State ex rel. Richards v. Manufacturers' Mut. Fire Asso. 50 Ohio St. 145, 24 L.R.A. 252, 33 N. E. 401; American Ins. Co. v. Stoy, 41·Mich. 385, 1 N. W. 877; 21 Am. & Eng. Enc. Law, 257. The law (Rev. Codes 1899, § 3108), a part of this contract, required that the amount of cash premium accepted should be written in the policy; that the company should charge and collect upon its policies the full mutual premium in cash or in notes absolutely payable. None of these requirements made prerequisite to a valid insurance contract was observed in this case. The note given was payable only upon the contingency of a loss and assessment. The amount payable was left in uncertainty until the happening of events which were not certain to follow. The statute required that the total amount of the liability of a policy holder should be plainly and legibly stated upon the back of the policy, that the by-laws fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by their cash funds, and that this contingent liability should not be less than a sum equal to and in addition to the cash premium written in the policy. These requirements were ignored. No cash fund could be obtained for the payment of expenses or losses under the form of con-

tracts admitted until assessments could be made and collected. No valid consideration was given for the insurance contract. The policy of the law would be frustrated if this invasion of its mandate could be tolerated. This policy was and is void."

The statute under consideration in these cases was practically identical with the present statute, the only substantial difference being that it did not contain the proviso that the policy should become and be absolutely void during the period of nonpayment.

Again in J. P. Lamb & Co. v. Merchants Nat. Mut. F. Co. 18 N. D. 253, 119 N. W. 1048, the court said (pages 258 and 259):

"A mutual insurance company organized under the laws of this state is an association of individuals organized to provide mutual relief for loss suffered. Its members all pay the same premiums or assessments for the same protection, and, when the policy expires, receive the same percentage or pro rata share of any net profits or surplus after complying with the statute providing for a reserve fund. Rev. Codes 1905, §§ 4441, 4442. Their minimum contingent liability is fixed by § 4440, Rev. Codes 1905, and the by-laws they adopt. Each member has the same proportionate interest in the surplus that every other member possesses and is liable to the same proportionate extent. All are entitled to the same treatment in matters relating to premiums, assessments, surplus, losses and liabilities. If one is favored in these respects by the officers or agents of the corporation, it is at the expense of his fellow members, and contravenes the principle of mutuality, which is the corner stone of the system of mutual insurance. Officers of stock companies may deal with its policy holders (who do not by virtue of being so become members or stockholders) with a far wider range of discretion than those of mutual companies, and conversely the company may be liable for acts of officers and agents which, if done by those representing the members and governed by by-laws of a mutual company, would not bind or render liable their principal. May on Insurance, at section 146, says: 'Mutual insurance, it is truly observed, is essentially different from stock insurance, and much of the litigation that has grown out of this species of insurance has been owing to inattention to this difference. Its original design was to provide cheap insurance by means of local associations, the members of which should insure each other. . . .'"

And, after referring to the Montgomery Cases, supra, and quoting from them, with approval, this query was proposed: "It may be inquired whether, if giving a note with the amount payable left in uncertainty avoided the policy by reason of a conflict with the statute providing for a fund out of which to pay losses and expenses, instead of a note absolutely payable, why the failure to pay cash or to give any note whatever should not equally avoid the policy."

Owing to the express provision of the statute, which as previously construed by this court is clearly designed for the protection of all having insurance in a mutual company, the policy in question must be held to have become void through the nonpayment of the premium. Otherwise, the statute would be emasculated.

The situation here differs from that existing in some other states where officers or members of a mutual company are given a discretion in regard to the adoption of by-laws containing requirements for the payment of premiums. In Minnesota, for example, the provision construed by the supreme court in Lenning v. Retail Merchants Mut. F. Ins. Co. 138 Minn. 233, 164 N. W. 908, was that any mutual company "may provide by its certificate or by-laws that upon the failure by any member for sixty days after notice thereof to pay any premium or assessment made upon his policy such policy shall lapse and become void without notice." General Statutes of Minnesota, 1913, § 3306. If such a matter is left to the company for regulation by the adoption of by-laws it might reasonably be held that such by-laws could be waived; whereas the members and officers of a mutual company, whose charter is fixed by a statute which prescribes definite consequences for the failure of members to pay certain amounts, are obviously incapable of waiving the charter provisions.

The judgment appealed from must be affirmed. It is so ordered.

NUESSLE, Ch. J., and BURKE and CHRISTIANSON, JJ., and PUGH, Dist. J., concur.

BURR, J., being disqualified, did not participate; Honorable THOS. H. PUGH, Judge of the Sixth Judicial District, sitting in his stead.