[File No. 6136.]

JAMES P. GODFREY and Charles Godfrey, Executors of the Last Will and Testament of Edmund Godfrey, Deceased, Respondents, v. NORTH DAKOTA FARMERS MUTUAL TORNADO & CYCLONE COMPANY, a Corporation, Appellant.

(248 N. W. 527.)

Opinion filed May 13, 1933.

W. D. Lynch and Geo. M. Price, for appellant.

Thomas Devaney, for respondents.

CHRISTIANSON, J. Plaintiff brought this action to recover upon an alleged contract of insurance insuring certain buildings owned by the plaintiff against loss by tornado, cyclone and windstorm. The sole question presented by the appellant on this appeal is whether a contract of insurance had been consummated so as to render the defendant liable as an insurer. It is admitted that the buildings owned by the plaintiff and claimed to be covered by the insurance contract were damaged by a windstorm, and the amount of damages sustained has been stipulated. The case was tried to a jury and resulted in a verdict in favor of the plaintiff, and the defendant has appealed from the judgment entered pursuant to the verdict.

It is the contention of the defendant that the evidence is insufficient to justify the verdict or to justify any verdict in favor of the plaintiff; that defendant's motion for a directed verdict should have been granted; that there were no issues of fact to submit to the jury, and that, consequently, defendant is entitled to a judgment of dismissal.

The facts necessary to an understanding of the issues involved are substantially as follows: The defendant is a mutual insurance company organized under the laws of this state for the purpose of insuring property against damage by tornado, cyclone, windstorm and hail. In

July, 1926, the plaintiff Godfrey applied for membership in the defendant company and received a policy therein insuring certain buildings on his farm in Cavalier county against damage by tornado, windstorm, cyclone and hail for a period of five years, such policy expiring July 22, 1931. On or about June 29, 1931, the plaintiff Godfrey had a conversation with one Bowles, a local soliciting agent of the defendant company. Bowles was the agent who had received plaintiff's application for insurance in July, 1926. As a result of the conversation had between the plaintiff and Bowles on or about June 29, 1931, the plaintiff signed an application for an insurance policy covering some of the buildings covered by the former policy. The first part of the application reads as follows: "Application of Edmund Godfrey to the North Dakota Farmers Mutual Tornado and Cyclone Insurance Company against loss or damage by Tornadoes, Cyclones, Hail or Wind Storms in the sum of Three Thousand Dollars for the term of five years on property as specified herein commencing the 22nd day of July, 1931, Provided that this application shall have been received and approved by C. J. Robideau, Secretary, LaMoure, No. Dakota, before insurance takes effect, no liability whatever of the Company attached under this application before such receipt and approval."

There is a conflict in the testimony as to what was said and done at the time the application was signed by Godfrey and delivered to Bowles. Godfrey testified that they met in the city of Langdon and that Bowles asked him if he desired to renew the insurance; that Godfrey answered in the affirmative; that thereafter the plaintiff signed the application for insurance and executed and delivered a note payable to the defendant company for $32.70 payable November 1, 1931; also that he paid him $2.00 in cash and that Bowles agreed to allow the defendant $3.00 for damages that had been sustained to a chimney on the house as the result of a windstorm. The plaintiff further testified that he received no notification from the company or Bowles that the application for insurance had been rejected. The undisputed evidence shows that on a subsequent date, to-wit, on July 8, 1931, the plaintiff and the defendant's agent, Bowles, had another conversation. There is, however, a square conflict as to what was said at this time. Bowles testified that he had been informed by the company that the application for insurance would not be accepted unless and until one-

fifth of the premium was paid in cash; and that on the 8th day of July, 1931, he informed the plaintiff of this requirement and stated that the application for insurance could not and would not be accepted unless and until plaintiff paid one-fifth of the premium in cash. The plaintiff admits that they had a conversation on July 8, 1931, but he denies that Bowles made any reference whatsoever to a cash payment of any part of the premium, or that he requested a cash payment.

The evidence discloses that on June 12, 1930, at a regular meeting of the Board of Directors of the defendant company, a motion was adopted providing that from and after that date "at least one-fifth of the premium covering applications for insurance in this company must be paid in cash and the balance of premium may be settled by note, to run for a period not extending over one year." This motion apparently formed the basis of the secretary's action in declining plaintiff's application for insurance.

The undisputed evidence shows that plaintiff's application for insurance was declined by the secretary of the defendant company and that no policy of insurance was ever issued. The undisputed evidence further shows that on July 27, 1931, the buildings on the plaintiff's farm, described in the application for insurance, were injured by a windstorm and that the defendant has denied all liability for such loss.

Respondent's counsel contends that the sufficiency of the evidence cannot be considered on this appeal, because defendant made no motion for a new trial. This contention is not well founded and is not sustained by the decisions of this court, cited by respondent's counsel. In the cases cited the legal sufficiency of the evidence had not been challenged by timely motion for a directed verdict, or the right to assign error in this court upon the adverse ruling on such motion had not been preserved. In this case the defendant moved for a directed verdict at the close of all the evidence, and on this appeal assigns error on the denial of such motion. If the defendant was entitled to a directed verdict, the denial constituted an error of law occurring at the trial, which was deemed excepted to (Comp. Laws 1913, § 7653): "the ruling on the motion for a directed verdict may be reviewed by the Supreme Court without a motion for judgment notwithstanding the verdict or a motion in the alternative for such judgment or for a new trial having been first made in the trial court;" . . . and "the supreme court,

on appeal from the judgment, may order judgment to be entered, when it appears from the testimony that a verdict should have been so directed. . . ." Comp. Laws 1913, § 7643 (Supp.). See also Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861; Horton v. Wright, B. & S. Co. 43 N. D. 114, 174 N. W. 67.

The next question which presents itself for determination is whether the evidence is sufficient to justify or sustain the verdict returned in favor of the plaintiff. In short, is there any substantial evidence from which it reasonably can be inferred that the defendant had entered into a contract with the plaintiff to insure his buildings against loss by windstorm? In view of the verdict all doubts, and all conflicts in the evidence, must be resolved in favor of the plaintiff. After resolving such doubts and such conflicts in plaintiff's favor, the facts are substantially these: On June 29, 1931, the plaintiff was a member of the defendant company and held an insurance policy issued by it, insuring certain farm buildings against damage by tornado, cyclone, windstorm and hail. That policy had been issued in July, 1926, upon a written application signed by the plaintiff. The application had been delivered by the plaintiff to one Bowles, a soliciting agent for the defendant company. That policy would expire July 22, 1931. On June 29, 1931, the plaintiff and the defendant's agent, Bowles, had a conversation relating to the insurance with the result that the plaintiff signed an application for another policy covering some, but not all, of the same buildings covered by the former policy; and plaintiff, at the same time, executed and delivered to Bowles a promissory note for the amount of the premium and he paid to Bowles, partly in cash and partly by an adjustment of damages which plaintiff claimed had been sustained to a chimney on his house on account of a windstorm, $5, for policy and inspection fees, which, under the arrangement between Bowles and the defendant company, Bowles would be entitled to retain for his services. The undisputed evidence shows that no part of the cash paid was transmitted by Bowles to the company. Bowles promptly transmitted the application and the note to the company and the secretary of the defendant company immediately returned them to Bowles with the information that the application for insurance could not be granted unless and until plaintiff paid one-fifth of the premium in cash in compliance with the resolution that had been adopted by the Board of Directors of the

defendant company on June 12, 1930. Bowles did not inform the plaintiff of the action of the secretary of the defendant company. As said, the first policy that had been issued to the plaintiff expired July 22, 1931, and the buildings described in and covered by the first policy and that were described in the application signed June 29, 1931, were damaged by a windstorm on July 27th, 1931. Do these facts establish a contract of insurance under which the defendant is liable for the injury that was sustained on July 27th? We are agreed that this question must be answered in the negative.

The defendant is a mutual insurance company. The different members of the company are all holders of insurance policies issued by the company. All persons applying for insurance and membership in the company were required to take notice of the law under which it was organized and authorized to do business; and the statute, the articles of incorporation, the by-laws, the application for insurance, and the policy issued became part of the contract and binding upon the several members of the company. Montgomery v. Whitbeck, 12 N. D. 385, 96 N. W. 327; Lamb v. Merchants Nat. Mut. F. Ins. Co. 18 N. D. 253, 119 N. W. 1048. The undisputed evidence in this case shows that Bowles was only a soliciting agent and that he had no authority or power to approve an application, or bind the company to a contract of insurance. His authority was restricted to soliciting insurance and submitting the applications received by him to the company and to perform such acts as were incidental to the solicitation of insurance and the submission of applications for membership and insurance. 32 C. J. 1067.

The statute provides that "mutual insurance companies shall charge and collect upon their policies the full mutual premium in cash or notes, . . . provided . . . that in case said premium be not so paid in cash or unconditional notes within sixty days from the date of issue, the policy shall become and be absolutely void and to remain void during the nonpayment of such premium. . . ." Comp. Laws 1913, § 4874. See also Bach v. North Dakota Mut. F. Ins Co. 56 N. D. 319, 217 N. W. 273.

The by-laws of the defendant company contain no provision relating to the payment of premiums by note. Section 2 of the by-laws provides: "When application for insurance is made to this company, the

following charges shall be collected: eighty cents per hundred for all classes of insurable property. The applicant shall also pay a policy fee. . . . When a policyholder wishes additional insurance before the expiration of his policy, he may submit to the company in the usual manner, an application embracing the amount already in force, together with the additional insurance desired, with the usual premium, and policy fee, and if such application be approved a new policy shall be issued. . . ." Section 12 of the by-laws empowers the secretary to discontinue or retrench the policy of any member by giving five days' written notice to such member. Nothing has been called to our attention in the articles of incorporation, the by-laws or any of the proceedings had at the meetings of the members of the company requiring that a note be accepted for the whole or any part of the premium. Hence, there can be no doubt as to the power of the officers, if they deemed this course desirable, to require the entire amount of the premium to be paid in cash. Clearly, the board of directors had authority to require that one-fifth of the premium be paid in cash. In refusing to approve the application of the plaintiff and issue a policy to him, the secretary of the company merely complied with the order of the directors. The written application which plaintiff signed, and without which he could not become a member, or receive a policy of insurance, specifically stated that no insurance should take effect and no liability should attach to the company under the application until it was approved by the secretary. The application was never approved.

The defendant is a mutual insurance company. The principle of mutuality is the basic element of the organization. This contemplates that each member shall have the same rights and the same liabilities as every other member and that special consideration or privilege shall be extended to no one. It would hardly be consonant with this principle to permit one member to obtain insurance without paying the amount of cash which the board of directors have said that all members must pay and which other members were required to pay as a prerequisite to membership and insurance protection. Lamb v. Merchants Nat. Mut. F. Ins. Co. 18 N. D. 253, 119 N. W. 1048, supra. We are agreed, therefore, that the evidence in this case fails to show any contract of insurance whatsoever. This is not a case where the defect in the proof is likely to be supplied upon another trial. The only reasonable as-

sumption is that there are no facts that could be adduced which would tend to establish a contract which would render the defendant liable for the damages sustained to plaintiff's buildings. In short, we are of the opinion that the defendant was and is entitled to a verdict as a matter of law. Accordingly the judgment appealed from must be and it is reversed and the cause is remanded with directions to dismiss the action.

NUESSLE, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.