Robert L. ANDERSON, Plaintiff/Appellant,

v.

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a Foreign Corporation, and James Erickson, Defendants/Appellees.

Civ. No. 9637.

Supreme Court of North Dakota.

June 20, 1980.

O'Grady & Morley, Grand Forks, and Neil W. Fleming, Cavalier, for plaintiff and appellant; argued by Lowell A. O'Grady, Grand Forks, and Neil Fleming, Cavalier.

Robert B. Hunter, Grand Forks, for defendants and appellees.

PAULSON, Justice.

Robert L. Anderson ["Anderson"] appeals from a June 15, 1978, judgment of the Pembina County District Court entered pursuant to a jury verdict. The jury found that an insurance contract issued to Anderson by American Standard Insurance Company ["American Standard"] was not in full force during the period from March 17, 1976, through June 17, 1976. Anderson also appeals from an order of the district court denying his motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. We affirm.

On March 17, 1976, Anderson contacted American Family Insurance Group's agent, James Erickson ["Erickson"], to inquire about obtaining insurance for a 1960 Ford van which he had recently purchased. Be-

cause of Anderson's age, Erickson suggested a policy of insurance with American Standard, a subsidiary of the American Family Insurance Group which writes high-risk policies. Anderson, apparently with no intention of deceiving Erickson, told Erickson that he was 20 years of age. Erickson proceeded to draw up an application for insurance and computed the premium rate applicable to Anderson. He computed a premium rate of $46.00 in a mistaken belief that Anderson was 20 years of age. In the course of filling out the application, Anderson informed Erickson that his, Anderson's, birth date was April 30, 1958. Erickson did not realize from the birth date supplied that Anderson had not yet attained the age of 20 years.

Erickson issued a binder or temporary contract of insurance to Anderson which bound liability coverage for a period not to exceed thirty days pending issuance of the policy. The binder showed the amount paid as $46.00 and indicated that there was no balance due. At the time Erickson issued the binder he informed Anderson that the main office of American Standard in Madison, Wisconsin, would review the application and would check the accuracy of statements Anderson had made regarding his driving record, and would adjust the premium if those statements proved untrue. Anderson left Erickson's office with the impression that the company would only change the premium if it found an inaccuracy in the statements he had made on the application regarding his previous driving record.

Ten days after Anderson had sent in his application he received a copy in the mail of his insurance policy from American Standard. The policy indicated that a premium of $52.00 was paid. Included in the envelope containing the policy was a premium notice indicating a balance due of $6.00, and a note from the company that the premium differed from that of his application because his age was 19, and not 20. Agent Erickson has admitted his mistake in submitting the application with a $46.00 premium to American Standard where Anderson's correct birth date showed that he was

19 and not 20 years of age, as Erickson erroneously believed when he computed the premium rate. Exhibit 14 in the trial court was the note from the company which explained why Anderson's premium of $52.00 was different than the $46.00 he had submitted with the application. Exhibit 14 is a standard balance-due form used by American Standard, and notations on that form indicated "Rate Class 'E–7'" and "Single Male–19". Admittedly, these cryptic notations on the balance-due form may have been confusing to Anderson because he had submitted his correct birth date on the application form. The testimony is conflicting regarding the reason for the discrepancy in Anderson's age at the time the application was filled out, Anderson and Erickson each claiming that the other was responsible.

After approximately two weeks had elapsed, American Standard sent Anderson a second notice that $6.00 was due in order to continue his insurance until June 17, 1976. Anderson testified that he "more or less ignored" the second billing. On April 26, 1976, American Standard sent by certified mail a General Form Endorsement to Anderson which reduced his policy term from June 17, 1976, to June 6, 1976. That endorsement states as follows:

"EXPIRATION DATE CHANGE

"In consideration of the premium actually paid, which is less than the amount required for the current renewal term of this policy, it is agreed that the expiration date for such current term of this policy shall be and hereby is changed to read:

EXPIRATION DATE 6–06–76 $6.00

All coverages hereunder shall cease on the expiration date shown above at the time of the day as stated in the policy, unless the policy is renewed pursuant to its terms."

Anderson testified that he received this endorsement but that he ignored it.

Under the terms of the policy, American Standard had the option to cancel the policy

for nonpayment of premium. The company instead chose the less harsh alternative of changing the expiration date of the policy to conform to the amount of the premium actually paid by Anderson.

Anderson went to Erickson's office on June 5, 1976, and attempted to tender a partial payment to Erickson for the purpose of renewing his policy. Erickson testified that Anderson had a bill for $46.00 from the company with him (his premium of $46.00 reflected the fact that he had now attained the age of 20), but Anderson asked if he could pay for only one month, or about $15.00. Erickson informed Anderson that he was not authorized to accept a partial premium payment but was required to collect the premium for the entire three-month renewal period. Anderson left without paying the premium for renewing his policy.

On June 10, 1976, Anderson's van was involved in a collision with another vehicle. Diane Herzog, a passenger in the van, was seriously injured in the collision. Anderson called Erickson on June 11, 1976, and was informed that the company would not cover him because his policy had expired prior to the accident. Anderson brought suit against American Standard and judgment was entered in favor of American Standard pursuant to a jury verdict of no coverage.

The pivotal question in this case is whether Anderson's policy expired on June 6, 1976, or whether his policy was in full force and effect until June 17, 1976.

When we review a jury verdict we review the evidence in the light most favorable to the verdict. *City of Hazelton v. Daugherty*, 275 N.W.2d 624 (N.D.1979). By so doing, an appellate court demonstrates its respect for the jury in our system of jurisprudence.

▄▄▄ Anderson has argued that American Standard is estopped from denying that it received full payment of the premium for the period from March 17, 1976, to June 17, 1976, because the policy delivered to Anderson indicated on its face that the premium was paid in full. As support for his argument, Anderson cites § 26–04–02 of the North Dakota Century Code, which provides:

"*26–04–02. Receipt for premium in policy—Effect.*—An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment so far as to make the policy binding notwithstanding any stipulation in the policy that it shall not be binding until the premium actually is paid."

Anderson contends that under § 26–04–02, N.D.C.C., the company was bound by its statement in the policy that the premium has been paid. We believe Anderson is asking us to interpret § 26–04–02, N.D.C.C., in a manner which would stretch its meaning beyond the clear import of its words and frustrate its purpose. In our interpretation, § 26–04–02, N.D.C.C., is designed to protect the policyholder in two situations: (1) where the insurance company argues that the policy coverage never commenced due to nonpayment of premium; or, (2) where the company argues that the policy has terminated for nonpayment of premium but has never given the insured notice that the premium or a balance thereof was due.

Anderson has cited two North Dakota cases which have interpreted § 26–04–02, N.D.C.C., namely, *Harrington v. Mutual Life Ins. Co. of New York*, 21 N.D. 447, 131 N.W. 246 (1911); and *Donahue v. Mutual Life Ins. Co. of New York*, 37 N.D. 203, 164 N.W. 50 (1917). Both of those cases are distinguishable in that they were concerned with the question of when the contract of insurance came into existence, not when the contract expired.

*Sawyer v. State Farm Fire and Casualty*, 69 Cal.2d 801, 447 P.2d 344, 73 Cal.Rptr. 232 (1968), supports Anderson's position that the statute applies to termination as well as commencement of the policy period. The California statute [Cal.Ins.Code § 484 (West)] was identical to § 26–04–02, N.D.C.C., at the time that *Sawyer* was decided. In *Sawyer* the California Supreme Court held that the acknowledgment of the receipt of premium in the policy must be deemed to apply to the stated term of the policy and that the policy could not be canceled for nonpayment of the premium.

We cannot agree with Anderson's position nor can we follow the approach taken by the California Court in *Sawyer*. We agree with the logic in the dissenting opinion written by Justice McComb in *Sawyer*, *supra* 447 P.2d at 351, 73 Cal.Rptr. at 239. We quote extensively the following language from Justice McComb's dissenting opinion in *Sawyer*:

"McCOMB, Justice (dissenting).

". . . In my opinion, there is some doubt that the language of the policy here involved should be interpreted to include an acknowledgment of the receipt of premium. In any event, however, it seems to me that defendant had a right, upon proper notice before a loss, to exercise the cancellation right reserved to it in the policy.

"Under section 484 of the Insurance Code, if a policy contains an acknowledgment of the receipt of premium, such acknowledgment cannot be contradicted to invalidate the contract; but this does not mean that either party is prohibited from exercising cancellation rights contained in the policy. To interpret section 484 to mean that a policy containing an acknowledgment of the receipt of premium cannot be cancelled, upon proper notice before a loss, is to read words into the statute that are not there, which, of course, is something this court should not do. [Citations omitted.]

"Under the majority's interpretation, the clause 'so far as to make the policy binding' is expanded to mean 'so far as to make the policy binding for the entire period covered by the premium acknowledged to have been received.' In my view, it could not have been the intention of the Legislature to so provide. Rather, it appears to me, from the clear language of the statute, that the Legislature intended to provide that if the receipt of premium is acknowledged in the policy, a binding insurance contract has come into existence even though (1) the policy provides that it shall not be binding until the premium is actually paid, and (2) the premium has not been paid. The section does not in any way indicate that such

binding contract of insurance is immune from cancellation, when the right of cancellation has been reserved to the insurer in the policy."

The California Legislature, apparently as a reaction to the holding in the *Sawyer* opinion, amended § 484 of the California Insurance Code in 1969 to read as follows:

"*§ 484. Policy as receipt; cancellation*

"An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment, so far as to make the policy binding. Notwithstanding such acknowledgment, a policy may be canceled effective at such times as otherwise permitted by law for nonpayment of all or any portion of the premium which is actually unpaid if such cancellation right is reserved to the insurer in the policy."

■ An insurance contract is a contract of adhesion, and as such is to be construed against the insurer and in favor of the insured. *Kasper v. Provident Life Ins. Co.*, 285 N.W.2d 548, 553 (N.D.1979). Where the insurance contract is unambiguous its meaning should not be strained to impose liability on the insurer. *Kasper, supra* 285 N.W.2d at 553. In the instant case, the company clearly reserved a right of cancellation in the policy. Rather than exercise its right of cancellation, American Standard modified the expiration date of the policy to conform to the amount of premium actually paid.

■ Payment of premiums in accordance with the conditions of an insurance policy is a condition precedent to the maintenance of insurance and an essential part of the insurance contract. *See Sjoberg v. State Auto Ins. Ass'n of Des Moines, Iowa*, 78 N.D. 179, 48 N.W.2d 452, 453 (1951); *Bach v. North Dakota Mutual Fire Ins. Co.*, 56 N.D. 319, 217 N.W. 273, 276 (1928); *Rumsey v. St. Paul Mercury Ins. Co.*, 242 N.W.2d 677 (S.D. 1976); and *Presentation Sisters, Inc. v. Mutual Ben. Life Ins. Co.*, 85 S.D. 678, 189 N.W.2d 452 (1971).

*Rumsey, supra* 242 N.W.2d 677 is factually similar to the instant case. In *Rumsey*,

plaintiff owed the insurer a balance of $10.20 on his automobile insurance premium. Plaintiff was sent a notice that his balance of $10.20 was due in ten days. When the insurer did not receive the balance-due payment, it canceled Rumsey's policy and returned the unused portion of his premium. Rumsey was involved in an accident after the effective date of cancellation. The South Dakota Supreme Court, applying Oregon law to the case because the contract of insurance was made in Oregon, determined that the cancellation was effective.

■ In the instant case, the question was one of modification of the insurance contract because the company never exercised its cancellation rights. The trial court instructed the jury as follows:

### "MODIFICATION OF INSURANCE CONTRACT.

"An insurance contract may be modified by endorsement. The parties to the contract may make such modifications thereof as they may mutually agree upon. An endorsement proposed by one party only, and not consented to by the other, will not effect a modification of the insurance policy. It is essential for a valid modification of a contract of insurance that all elements of contract be present which were initially necessary to make a binding insurance contract."

"Consent or acquiescence by the silence of an insured to a modification of an insurance policy will result only if the insurer was injured or influenced in its conduct by the silence of the insured. The burden of persuasion is upon American Standard to prove that it was so injured or that its actions were influenced by the silence, if such there was, of the insured which signified his consent to the proposed modification and resulted in a misleading of the insurer."

We believe that the foregoing jury instruction was a correct statement of the law in North Dakota. An insurance contract is essentially the same as any other type of contract. It is composed of the same elements and can be modified by the same means.

■ We conclude that because Anderson received notice that there was a balance owing on the policy and because the company reserved broad cancellation rights under the policy, American Standard was within its rights to modify the policy by changing the expiration date to conform to the amount of premium actually paid. Anderson acquiesced in the modification of the expiration date by his silence because his silence influenced the conduct of American Standard in shortening the term of the policy. *See* 17 Couch on Insurance § 65.:23 (2d Ed.1967). His acquiescence in the modification of the policy is also illustrated by the fact that he attempted to renew his policy on June 5, 1976 (one day before it expired as modified) for a period of one month and attempted to tender a $15 payment. We note here that the policy did not include a grace period providing for renewal within a given time after its expiration.

■ We note the importance of the fact that Anderson received three different notices from American Standard relating to the fact that he still owed $6 on his premium. Any one of these notices, standing alone, may have been inadequate notice as a matter of law. However, the totality of the facts in this case indicate that Anderson should have been aware of some problem with his premium payment and the jury was justified in finding no coverage because of Anderson's failure or refusal to take steps to alleviate the problem. We do not condone American Standard's policy of informing an insured of the reasons for an inadequacy in premium paid by its utilization of a standardized form marked with cryptic notations. It would be much more effective and take only a little more time for the insurer or its agent to write a letter to the insured specifically explaining any defects in the agreement and how to correct

them, especially in a case such as the instant case where the mistake on the application was caused by the insurance agent.

We also conclude that the trial court did not err in denying Anderson's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial because the evidence supports the jury verdict of no coverage. *Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182 (N.D.1973) [judgment notwithstanding the verdict]; and *Hoge v. Hoge*, 281 N.W.2d 557 (N.D. 1979) [new trial].

Judgment affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.