. (96 N. W. Rep. 357.)

---

GEO. S. MONTGOMERY, RECEIVER OF THE RED RIVER VALLEY MUTUAL HAIL INSURANCE COMPANY OF NORTH DAKOTA *v.* ANDREW WHITBECK.

Opinion filed August 7, 1903.

**Promoters of a Mutual Insurance Company Cannot Bind It Before Its Organization.**

1. The promoters of a mutual insurance company are authorized and required to take applications for $200,000 of insurance before the company is organized, but such promoters have no authority to bind the corporation by any kind of contract before it is organized and authorized to do business.

**Policy Issued Before Its Incorporation Does Not Bind a Mutual Insurance Company.**

2. A policy of insurance, signed with the names of the president and secretary of the corporation, and delivered to an applicant for membership before the corporation has come into existence and before officers could be elected or the corporation enter into binding contracts, is not enforceable against the company after it has been organized and authorized to do business.

**Disregard of Statutory Requirements in the Issuance of Policy Renders It and Assessments Thereunder Void.**

3. · Where the statute upon which a mutual insurance company was organized required it to charge and collect upon its policies the full mutual premium in cash or notes absolutely payable, and in its by-laws to fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds, and

that such contingent liability of each member should not be less in amount and should be in-addition to the cash premium written into the policy, and that the total liability of a policy holder should be legibly stated on the back of each policy, a total disregard of each of these requirements in the issuance of its policies rendered the policies void, as in conflict with the statute, and no assessment for losses could be made or enforced thereunder.

### The Statute, By-Laws, Application and Policy Are Parts of Contract of Insurance of Which Notice Must Be Taken.

4. Every person applying for insurance and membership in a mutual insurance company must take notice of the law of the state under which it is organized, and is authorized to do business. This statute, the articles of incorporation, by-laws, application for insurance, and the policy each become parts of the contract and binding upon the member.

### Where All Members Are On Same Footing, There Is No Estoppel Against Ultra Vires.

5. Where all policy holders in a mutual insurance company are on the same footing, none with equities superior to his associates growing out of the business done in defiance of statutory requirements, no estoppel will be indulged against any member asserting the *ultra.vires* nature of the business done.

### Member Not Estopped to Show Ultra Vires Against Illegal Contract.

6. The doctrine of estoppel *in pais* does not extend so far as to enable a person or corporation to do in effect what is forbidden by law, or what they are otherwise incapable of doing, and therefore a party to a contract with a mutual insurance corporation, made in violation of the letter and policy of the statute under which the corporation is organized and authorized to do business, is not estopped to show its illegality for the purpose of preventing a recovery upon it.

Appeal from District Court, Richland county; *Lauder, J.*

Action by George S. Montgomery, as receiver of the Red River Valley Mutual Hail Insurance Company of North Dakota, against Andrew Whitbeck, to recover an assessment upon a policy. Plaintiff recovered in justice court, and afterwards, on appeal to the district court, a verdict was returned in his favor by direction. Defendant appeals from the judgment entered upon the verdict.

Reversed.

*Lee Combs,* for appellant.

A mutual insurance company, under section 3108, Rev. Codes, must charge and collect fixed premiums from each of its members,

either in cash or note payable absolutely. *Montgomery* v. *Harker*, 9 N. D. 527, 84 N. W. Rep. 369. Not having done so, the policy is void. *Williams* v. *Babcock*, 25 Barb. 116.

If the statute expressly forbids a corporation to make a certain contract, such contract is void, even if not expressly declared to be so, and it is incapable of ratification; and that it is void and unlawful may be pleaded by anyone in an action founded on it, unless, (1) the statute expressly states what the consequences of violating it shall be, and these consequences are other than that the contract shall be void; (2) unless the statutory prohibition was evidently imposed for the protection of a certain class of persons, who may take advantage of it; or, unless to adjudge the contract void and incapable of forming the basis of a right of action would clearly frustrate the evident purpose of the prohibition itself. *In re Mutual Guaranty Fire Insurance Co.; Alvoid* v. *Barker et al.,* 77 N. W. 868; *Kent* v. *Mining Co.,* 78 N. Y. 159; *Miller* v. *Insurance Co.,* 21 S. W. Rep. 39; *Rochester Fire Ins. Co.* v. *Martin,* 13 Minn. 59.

*Purcell & Bradley* and *Chas. E. Wolfe,* for respondents.

The defense, that the acts of the corporation were *ultra vires,* was not pleaded by defendant, who was a member of the company, and he could not plead it, after having dealt with it, and by his acts ratified those of the company.

The state alone could plead such a defense, or make it an affirmative cause of action. *Washburn Mill Co.* v. *Bartlett,* 3 N. D. 138, 54 N. W. Rep. 544.

Defendant's application and assessment note were before the Commissioner of Insurance when he examined into the fact that the requisite amount of insurance was subscribed for, to enable the company to do business. His certificate when issued authorizes the issuance of policies. His decision declares that the application complies in all respects with the law. He is a judicial officer, and his determination is binding upon all, including the state. *Montgomery* v. *Harker,* 9 N. D. 527, 84 N. W. Rep. 369; *Sabariego* v. *Maverick,* 124 U. S. 261, 31 L. Ed. 430.

The state, which alone can incorporate, may waive the breach or acquiesce in the usurpation. *Lehman, Dore & Co.* v. *Warner,* 61 Ala. 455; *Bakersfield Town Hall Ass'n* v. *Chester,* 55 Cal. 98; *Humphrey* v. *Money,* 5 Colo. 282.

COCHRANE, J.   The Red River Valley Mutual Hail Insurance Company of North Dakota was organized as a mutual insurance company under the provisions of chapter 14 of the Civil Code, and received its certificate of authority to do an insurance business on the 23d day of April, 1898.   Defendant signed a written application for insurance and membership in this company on April 14, 1898, and his policy of insurance was executed and delivered to him on the same day.   By his application defendant stipulated to pay all just assessments, not to exceed 5 per cent of the face of his policy, or $60, to be governed by the articles of incorporation and bylaws of the company, his insurance to run for five years, beginning on April 14, 1898, and describing the land upon which the crops were to be grown.   As a part of the transaction, and to cover his membership fee, all premiums and assessments, he executed and delivered to the party taking his application a note in the following terms: "$60.   Courtenay, N. D., April 14, 1898. On or before the first day of October, for value received, I promise to pay to the order of the Red River Valley Mutual Hail Insurance Company of North Dakota the sum of sixty dollars, or such portion thereof as may be assessed on my policy by the officers of said company for payment of expenses and losses by hail according to the bylaws, rules and regulations of said company, with interest at the rate of eight per cent per annum from the maturity hereof, payable at the office of the company at Wahpeton, N. D.   There is included in this note a membership fee of ——.   Section 20, Twp. 142, range 62; P. O. Courtenay, N. D.   Andrew Whitbeck.   Policy Number 1302.   Non-negotiable."   His certificate of indemnity and membership delivered to him in exchange for his note and application was in the following language:

"The Red River Valley Mutual Hail Insurance Company of North Dakota, by this certificate, insures Andrew Whitbeck, of Courtenay P. O., County of Stutsman, State of North Dakota, his heirs and assigns, against loss or damage to growing crops by hail, commencing at noon on the 14th day of April, 1898, and ending January 1st, 1903, in accordance with the articles of incorporation and bylaws of this company, on the following described premises:

| County | Acres | Quarter | Section | Town-ship | Range | Am't |
|--------|-------|---------|---------|-----------|-------|------|
| Stutsman.............. | 160 | S. E. | 20 | 142 | 62 | $ 600 |
| Stutsman.............. | ..... | N. E. | 20 | 142 | 62 | 600 |

. "Loss, if any, payable to Andrew Whitbeck as his interest may appear. This insurance is based⁼ upon the written application of the assured, and upon the approval whereof the Red River Valley Mutual Hail Insurance Company of North Dakota has caused these presents to be signed by its president and attested by its secretary at its office in the city of Wahpeton.

G. W. Pease, President.

"Attest: B. J. Howland, Secretary."

The articles of incorporation and by-laws were printed upon the back of this policy; also a notice as follows: "The assured is hereby notified that by virtue of this policy he is a member of the Red River Valley Mutual Hail Insurance Company of North Dakota, and that the annual meetings of such company are held at its home office in the city of Wahpeton, Richland county, North Dakota, on the second Wednesday of November of each year, at 10 o'clock, a. m."

Plaintiff was appointed receiver of this company December 29, 1899. Its assets consisted entirely of notes in the form of the one hereinbefore set forth. The action was to recover an assessment attempted by the directors in September, 1899, to meet losses for that year. The same form of notes and policies were issued to all members of the association. The certificate of insurance and membership proven in this case bears the signature of the president and secretary, and has indorsed upon its back what purports to be the by-laws of the corporation, and it was delivered to the defendant nine days before the corporation received its certificate from the commissioner of insurance authorizing it to do business or to issue policies. Section 3090, Rev. Codes.

The promoters of mutual insurance societies are authorized, and required, as a preliminary to organization, to take applications for $200,000 of insurance in not less than 100 separate risks before a policy can be issued. Section 3104, Rev. Codes. The purpose of this is, doubtless, to secure at the start a fund from the cash premiums sufficient for current expenses and early losses.

Appellant, from the date of his application, must have been one of the number which the promoters of this enterprise secured as an advance subscriber. There is no evidence of a redelivery of the policy after the corporation was authorized to do business; nor was any cash premium paid or note absolutely payable given by the defendant after the legal organization of the company, if any was effected. "That a corporation should have a full and complete organization and existence as an entity before it can enter into any kind of a contract or transact any business, would seem to be self-evident. Until organized, it has no being, franchises, or faculties. Nor do those engaged in bringing it into being have any powers to bind it by contract, unless so authorized by its charter. Until organized as authorized by the charter, there is not a corporation. By its birth it for the first time acquires its faculties to transact its business and perform its functions. * * * If it was intended that the application for the policy and the giving of the premium note should constitute a contract to insure, such a provision would not have been enacted; but by its adoption it is manifest that the general assembly intended that the application and note should be held simply to be acted upon after the organization should be completed. It was simply a proposition or an application for a policy after the organization should be had and the company authorized to take risks and issue policies. Beyond that the incorporators had no power to bind the future company." *Gent* v. *Mfg.. etc., Ins. Co.,* 107 Ill. 658; *Farmers' Mut. Ins. Co.* v. *Burch* (S. C.) 24 S. E. 503; *Lagrone* v. *Timmerman* (S. C.) 24 S. E. 290. The reading of the statute is plain. The certificate of the commissioner of insurance, when issued and recorded, "shall be its authority to commence business and issue policies." Had the statute stated that no policy could be issued until the certificate from the commissioner had been obtained, its mandate could not have been more readily understood. *Montgomery* v. *Harker,* 9 N. D. 527, 84 N. W. 369.

We need not pause upon the proposition that the corporation retained the non-negotiable contract of appellant, and treated the policy as if redelivered after it received its certificate of authorization, and that the acts of both parties were such concerning the transaction as to estop either from questioning the binding force of it. Even if, as between the parties, it were possible to establish a liability by estoppel, none exists here. One who accepts a policy

of insurance in a mutual insurance society organized under the provisions of chapter 14 of the Civil Code thereby becomes a member of the society, and must take notice of the terms of the contract to which he is a party. The statute under which the corporation is organized, the articles of incorporation, and the by-laws are made to contain the whole plan of insurance, its limitations, extent, and the obligations imposed. They embrace the terms of the contract. Whatever vitality the policy of insurance possesses is derived from these sources. The statute authorizing and controlling the organization and business of this society became as much a part of the contract for insurance and membership as if its terms were incorporated into the printed certificate, and every person becoming a member was bound to take notice of it. Niblack, Mut. Ben. Soc. 271, 272; *Smith* v. *Sherman* (Iowa) 85 N. W. 747; *Davidson* v. *Society,* 39 Minn. 303, 39 N. W. 803, 1 L. R. A. 482; *Bradford* v. *Ins. Co.,* 107 Ill. 652; *Simeral* v. *Ins. Co.,* 18 Iowa 322; *State* v. *Mfg., etc., Ins. Co.* (Ohio) 33 N. E. 401, 24 L. R. A. 252; *Insurance Co.* v. *Stoy,* 41 Mich. 385, 1 N. W. 877, 21 Am. & Eng. Enc. L. 257. The law (section 3108, Rev. Codes 1899), a part of this contract, required that the amount of cash premium accepted should be written in the policy; that the company should charge and collect upon its policies the full mutual premium in cash or in notes absolutely payable. None of these requirements made prerequisite to a valid insurance contract was observed in this case. The note given was payable only upon the contingency of a loss and assessment. The amount payable was left in uncertainty until the happening of events which were not certain to follow. The statute required that the total amount of the liability of a policy holder should be plainly and legibly stated upon the back of the policy, that the by-laws fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by their cash funds, and that this contingent liability should not be less than a sum equal to and in addition to the cash premium written in the policy. These requirements were ignored. No cash fund could be obtained for the payment of expenses or losses under the form of contracts admitted until assessments could be made and collected. No valid consideration was given for the insurance contract. The policy of the law would be frustrated if this invasion of its mandate could be tolerated. This policy was and is void. *Smith* v. *Sherman* (Iowa) 85 N. W. 747; *Gent* v. *Mfg. Ins. Co.,* 107

Ill. 652; *Corey* v. *Sherman* (Iowa) 64 N. W. 828, 32 L. R. A. 490, 514; *Mut. Ins. Co.* v. *Barker,* 107 Iowa 143, 77 N. W. 868, 70 Am. St. Rep. 149; *McNulta* v. *Bank* (Ill.) 45 N. E. 954, 56 Am. St. Rep. 203; *Gas Co.* v. *Sims* (Cal.) 37 Pac. 1042, 43 Am. St. Rep. 105. The policy being void, the assessment cannot be enforced, and the note given was without consideration. *Haverhill Ins. Co.* v. *Prescott,* 42 N. H. 547, 80 Am. Dec. 123, 21 Am. & Eng. Enc. L. 258.

Appellant did not receive or retain any property of the corporation for which he was either morally or legally obligated to pay. He has nothing to restore. A contract of insurance entered into contrary to law or public policy is simply void, and neither party to it is estopped from showing the fact; otherwise the public law and policy would be at the mercy of individual interest and caprice. Bacon on Mut. Benefit Societies, section 424; *Spare* v. *Home Mut. Ins. Co.* (C. C.) 15 Fed. 707; *in re Comstock,* 6 Fed. Cas. 244 (No. 3,078) 3 Sawy. 218; *Keen* v. *Coleman,* 39 Pa. 299, 80 Am. Dec. 524; *Wheeler* v. *Russell,* 17 Mass. 258. Every member of this corporation was a party to these contracts, individually as the assured and collectively as the corporation. As parties to the contract with the corporation, they were severally *in pari delicto.* No estoppel operates either in favor of or against any of them, because there is nothing upon which it can be built. "An estoppel can never arise by implication alone, except from some conduct which induces action in reliance upon it to an extent that renders it a fraud to recede from what the party has been induced to expect. It is only enforced to prevent fraud." *Security Ins. Co.* v. *Fay,* 22 Mich. 468, 7 Am. Rep. 670. There cannot be any estoppel to show a violation of a statute, even to the prejudice of an innocent party. How much less can a corporation claim to bind a member to the payment of a void assessment on the theory of estoppel? To build up an estoppel against one situated as appellant is in this case and in favor of the corporation, would be to make the courts an instrument of oppression. In *Bank of the United States* v. *Owens,* 2 Pet. 538, 7 L. Ed. 512, the court held that a contract contrary to a clause in the act incorporating the bank which forbid it to take a greater interest than 6 per cent, but did not declare such contract void, was nevertheless illegal and void. In answer to the question whether such contracts are void in law upon general principles, the court says: "The answer would seem to be plain and obvious

that no court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a country. How can they, then, become auxiliary to the consummations of violation of law?" *Harris* v. *Runnels,* 12 How. 83, 13 L. Ed. 904.

Respondent relies upon section 2852, Rev. Codes. This statute is the expression of a rule long established to the effect that a defendant who has contracted with a corporation cannot collaterally question its powers in an action to recover on an obligation entered into with it; but the legality of the corporation or its powers to do a legal business is not here questioned. The objection here is to the want of power in the corporation, and not a defect in its organization. Uninfluenced by statute, the rule established by law as well as reason is that parties recognizing the existence of a corporation by dealing with it have no right to object to any irregularity in its organization, or any subsequent abuse of its powers not connected with such dealing. As long as these are overlooked or tolerated by the state, it is not for individuals to call them in question. *Methodist Epis. Church* v. *Pickett,* 19 N. Y. 485; *Washburn Mill Co.* v. *Bartlett,* 3 N. D. 138, 54 N. W. 544; *McFarlan* v. *Triton Ins. Co.,* 4 Denio. 397; *Swartwout* v. *Ry. Co.,* 24 Mich. 394. But where the objection is a want of power in the corporation, and not a defect in its organization, the case is different. *In re Comstock,* 6 Fed. Cas. 247 (No. 3,078), 3 Sawy. 218; *Wheeler* v. *Russell,* 17 Mass. 258; *Russell* v. *De Grand,* 15 Mass. 35. "The doctrine of estoppel *in pais* has never been carried so far as to prevent a party from showing that a corporation, even if it be one *de jure,* had not the power to do a particular thing, or that it was done in violation of statute. * * * For instance, if a corporation was forbidden by statute to carry Indians on its boats it could not make or enforce a contract for that purpose, and no one would be estopped from alleging the fact in bar of an action by the corporation for the passage money. In *Russell* v. *De Grand,* 15 Mass. 37, it was held that a promissory note given for the premium on a policy of insurance on a vessel bound on a voyage prohibited by the laws of the United States was void, and the defendant, though a party to the agreement, was permitted to show its illegality to defeat a recovery upon it. * * * The reason of the rule is apparent and satisfactory. The maintenance of the public policy of a state, as manifested by its legislation, is of much more

importance than the real or supposed equities of the parties to
an illegal transaction, and therefore they are not estopped to show
such illegality for the purpose of preventing the enforcement of a
contract in opposition to such policy; otherwise the public law and
policy would be at the mercy of individual interest and caprice.
* * * To allow this corporation, by means of an alleged estop-
pel, which grows out of the very act prohibited, to indirectly do
an act for which it had neither capacity nor right, would be prac-
tically to dispense with the limitation which the state has imposed
upon its power of doing business." *In re Comstock*, 6 Fed. Cas.
248 (No. 3,078) 3 Sawy. 218.

This disposes of the respondent's contentions that defendant is
estopped by his contract; that none but the state can question
its validity, and that in a direct proceeding; and that the contract
is not void as in conflict with the policy of the law, because not
in express words in the statute so declared.

Our conclusion is that the judgment appealed from should be
reversed. It is so ordered. Appellant will recover costs of justice
and district courts and of this court. All concur. .