[File No. 6075.]

GORDON HOLGERSON, a Minor, by Jorgen Holgerson, His Guardian ad Litem, Respondent, v. CITY OF DEVILS LAKE, a Municipal Corporation, the Park Board of Said City, and Elmer Engebretson, Howard Maher, Joe Wickert, Ike Samuelstad and Arthur Powell, Individually and as Members of Said Park Board.

ELMER ENGEBRETSON, Howard Maher, Joe Wickert, Ike Samuelstad and Arthur Powell, Appellants.

(246 N. W. 641.)

Opinion filed January 14, 1933. Rehearing denied February 20, 1933.

156

*Clyde Duffy,* for appellants.

*J. C. Adamson,* for respondent.

NUESSLE, J.   Plaintiff, a minor, seeks in this action to recover damages for injuries alleged to have been incurred by reason of the negligence of the defendants in the construction, maintenance and operation of a toboggan slide within the city of Devils Lake.   The several defendants demurred to the complaint.   The demurrers of the defendant city and of the defendant park board (Park District), were sustained. The demurrers of the individual defendants were overruled.   The individual defendants appeal from the order overruling their demurrers.

Plaintiff alleges in his complaint that the defendant the city of Devils Lake is a municipal corporation, organized and existing under the laws of the state of North Dakota; that the defendant park board (Park District) is an agency of said corporation, duly constituted; that the individual defendants, Elmer Engebretson, Howard Maher, Joe Wickert, Ike Samuelstad and Arthur Powell, are the duly elected and qualified members of the board of commissioners of the defendant park district and were such at the time the injuries for which the plaintiff seeks to recover were sustained; that in November, 1931, the defendants caused a toboggan slide to be constructed with public funds within the city limits and opened the same to the public; that the plaintiff, by reason of the negligence of the defendants in the construction, maintenance and operation of the slide, sustained bodily injuries; that he presented his claim to the city and to the park board and that said claim was disallowed; that the said toboggan slide was built and located upon premises belonging to the Devils Lake School District and to which none of the defendants had title; that the erection of such slide upon this property "was wholly unwarranted, not for a legitimate park board activity or purpose and not in pursuance of a governmental agency function or purpose, and a wrongful diversion of public moneys derived from taxation to a purely private enterprise promoted by the defendants and actively promoted and in charge" of the individual defendants.   The ground of the demurrers interposed by the several defendants was that

the complaint did not state facts sufficient to constitute a cause of action.

In support of their demurrers the individual defendants urged below, and now urge, that they were members of the board of park commissioners; that in building the toboggan slide they acted as members of said board and were thus functioning as a public agency in the performance of a govermental act. On the other hand, the plaintiff insists that the building, maintenance, and operation of the toboggan slide were not within the scope of the authority conferred by statute upon the defendants as a park board; that they were not engaged in the performance of any duty imposed upon them as members of the park board; that they were not as such the agents of the city of Devils Lake or of the park district engaged in the performance of a governmental function, and that therefore they are responsible to the plaintiff for the injuries claimed to have been sustained by reason of the alleged negligence.

The kernel of the plaintiff's contention seems to be that the toboggan slide in question, though erected with public funds by the individual defendants purporting to act as a board of park commissioners, was erected and maintained on property not belonging to the park district and that therefore they were acting beyond the socpe of their authority and beyond their jurisdiction and so cannot claim the immunity to which they would have been entitled had they acted within their authority as a board of park commissioners. This is the position taken by the plaintiff upon this appeal and apparently the position on which he grounded his suit in the district court. The district court adopted this theory and predicated its order overruling the demurrers of the individual defendants thereon. There is no appeal from the orders sustaining the demurrers of the defendants city and park district, so we are not called upon to consider the propriety of these orders. Nevertheless we are concerned with the questions as to the responsibility of the city and of the park district inasmuch as these questions must be considered in determining the liability of the board of commissioners and of the individual members thereof.

Under the rule established in this jurisdiction "A municipality is not liable for the tort of its agent committed in the course of the performance of a governmental duty, nor for the manner in which it exercises its governmental authority, nor for the failure to exercise it

properly." Hanson v. Berry, 54 N. D. 487, 209 N. W. 1002, 47 A.L.R. 816. And a park district organized under the provisions of article 24 of chapter 49 of the Political Code, being §§ 4057 et seq., Comp. Laws 1913, as amended, is a corporate agency. As such it possesses broad and exclusive powers. Fargo v. Gearey, 33 N. D. 64, 156 N. W. 552. These powers are exercised through an elective board of park commissioners, the members of which serve without compensation. And thus functioning the park district and its board of commissioners are engaged in the performance of a public duty and a governmental function. See Norman v. Chariton, 201 Iowa, 279, 207 N. W. 134; Hibbard v. Wichita, 98 Kan. 498, 159 Pac. 399, L.R.A. 1917A, 399; Emmons v. Virginia, 152 Minn. 295, 188 N. W. 561, 29 A.L.R. 860; Caughlan v. Omaha, 103 Neb. 726, 174 N. W. 220; Adler v. Salt Lake City, 64 Utah, 568, 231 Pac. 1102; Russell v. Tacoma, 8 Wash. 156, 35 Pac. 605, 40 Am. St. Rep. 895; Bernstein v. Milwaukee, 158 Wis. 576, 149 N. W. 382, L.R.A. 1915C, 435, 8 N. C. C. A. 624; 6 McQuillin, Mun. Corp. 2d ed. § 2850, and cases cited. But see, also, Norberg v. Hagna, 46 S. D. 568, 195 N. W. 438, 29 A.L.R. 841; Byrnes v. Jackson, 140 Miss. 656, 105 So. 861, 42 A.L.R. 254; Ramirez v. Cheyenne, 34 Wyo. 67, 241 Pac. 710, 42 A.L.R. 245, 25 N. C. C. A. 646; Warden v. Grafton, 99 W. Va. 249, 128 S. E. 375, 42 A.L.R. 259, and note. Accordingly they are not liable for the manner in which the governmental authority is exercised. Hadler v. North West Agri. Asso. 61 N. D. 647, 239 N. W. 736; Hanson v. Berry, 54 N. D. 487, 209 N. W. 1002, 47 A.L.R. 816, supra; Anderson v. Board of Education, 49 N. D. 181, 190 N. W. 807; Moulton v. Fargo, 39 N. D. 502, 167 N. W. 717, L.R.A. 1918D, 1108; Montain v. Fargo, 38 N. D. 432, 166 N. W. 416, L.R.A. 1918C, 600, Ann. Cas. 1918D, 826; Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092. And this immunity extends to the individual members of the board so long as they act within the scope of their authority in the performance of a duty owing solely to the public. Antin v. Union High School Dist. 130 Or. 461, 280 Pac. 664, 66 A.L.R. 1271, and note. See also Warren v. Topeka, 125 Kan. 524, 265 Pac. 78, 57 A.L.R. 555; Smith v. Iowa City, 213 Iowa, 391, 239 N. W. 29.

Thus the determinative question here is as to whether, under the facts set forth in the complaint, it can be said to reasonably appear that

the individual defendants were not acting within the scope of their authority as governmental agents in carrying on a public enterprise and function.

Since this question arises on demurrer, all the intendments must be considered in favor of the complaint, and all facts well pleaded, together with such inferences of fact as can be reasonably drawn therefrom, must be considered as admitted. Nevertheless, viewing the whole complaint, it seems to us it does not state facts sufficient to constitute a cause of action and that the demurrers of the individual defendants should have been sustained.

Plainly the theory of the plaintiff in drawing the complaint was that the enterprise in question, and on account of which he claims to have been injured, was constructed, maintained and operated by the board of commissioners of the defendant park district, but that all that was done in that behalf was beyond and without the scope of the authority of the board because the slide was located on premises belonging to the school district. After setting forth the municipal corporate organization of the city and of the park district thereof and that the individual members are the duly elected and qualified members of the board of park commissioners, the complaint alleges: ". . . that the defendants prepared and erected said toboggan slide on the location described (on the property of the Devils Lake School District) for the accommodation of all who desired to use the same regardless of age and that said slide was used by large numbers of persons regardless of age from the time of the erection up to and including the time that plaintiff received his said injuries and further that the defendants negligently constructed and erected the same and negligently permitted the same to be used by the public generally . . . without regard to competent supervision . . ." (Then follow the specific allegations of negligence, i. e., that they caused the toboggan slide to be erected and operated without sufficient safeguards or supervision for the protection of children.)

"That none of the defendants in this action had any title to the ground where said toboggan slide was located the same being the property of the Devils Lake School District and plaintiff alleges that the erection of apparatus for winter sports such as the toboggan slide in question upon said property of the school district was wholly unwarranted, not for a legitimate park board activity or purpose and not in

pursuance of a governmental agency function or purpose and a wrongful diversion of public moneys derived from taxation to a purely private enterprise promoted by defendants and actively promoted and in charge of the said defendants Engebretson, Maher, Wickert, Samuelstad and Powell."

Thus it appears that there was a park district organized under the provisions of article 24, chapter 49 of the Political Code, being §§ 4055 to 4063, inclusive, Comp. Laws 1913, as amended; that the individual defendants are the duly elected and qualified members of the board of commissioners thereof; that as such board and using public funds they caused the erection of the toboggan slide in question; that the title to the premises on which the slide was built was not in the park district but that the same belonged to a separate corporate entity, towit: the Devils Lake School District; that the public generally were invited to use and did use the slide in question; that the slide was not properly safeguarded and supervised and, as a consequence, the plaintiff was injured.

Under the provisions of article 24, supra, and more particularly pursuant to the terms of § 4057, Comp. Laws, 1913:

"Each park district of the state shall be known as 'park district of the city of . . .,' and as such shall have a seal and perpetual succession, with power to sue and be sued, contract and be contracted with, acquired by purchase, gift, devise or otherwise, and hold, own, possess and maintain real and personal property in trust for the purpose of parks, boulevards and ways, and to exercise all the powers hereinafter designated or which may hereafter be conferred upon it."

Section 4058, Comp. Laws, 1913, provides:

"The powers of each park district shall be exercised by a board of park commissioners consisting of five members. . . . The members of the board shall receive no compensation for their services as such, and shall have the qualifications of electors of such district. They shall not be interested in any contract entered into by said commission. . . ."

And under section 4059, as amended by chapter 180, Session Laws, 1929, the park commission is empowered:

"1. To acquire by purchase, gift, devise, condemnation or *otherwise,* land within or without its territorial limits, and within the State for

parks . ; . and shall have sole and exclusive authority to maintain, govern, erect and improve the same ; . . and in all cases where such commission has acquired the legal title in fee to such lands, power to sell and convey the same. . . .

2. To lay out, . . . and otherwise improve any path, way or street, in, through or around said parks and to construct, erect, build, maintain, manage, govern and erect any and all buildings, pavilions, play and pleasure grounds or fields and such other improvements of a like character as may be deemed necessary."

Pursuant to this statute it is clear to us that the board of commissioners of the park district in question, thus made up of the individual defendants, was clothed with the power and authority to cause a device, such as the toboggan slide on which the plaintiff claims to have been injured, to be erected and maintained. It is also clear, considering all the averments of the complaint, that the park board in thus erecting and operating the toboggan slide did not do so as individuals but as a governmental body acting in a legislative or discretionary capacity.

The fact (and on this the plaintiff predicates his claim of liability) that the toboggan slide was erected upon ground to which the park district had no title but which belonged to a separate corporate entity, does not change at all the public and governmental character of the enterprise. It is true that the complaint alleges that the erection of the slide was wholly unwarranted, not for a legitimate park board activity or purpose and not in pursuance of a governmental agency, function or purpose and a wrongful diversion of public moneys derived from taxation and a purely private enterprise. But we think, especially in view of the other allegations of the complaint, that these allegations are of conclusions of law rather than of fact and so are not admitted by the demurrer. Torgerson v. Minneapolis, St. P. & S. Ste. M. R. Co. 49 N. D. 1096, 194 N. W. 741; Johnson v. Minneapolis, St. P. & S. Ste. M. R. Co. 54 N. D. 351, 209 N. W. 786. It does not follow that because the slide was erected on school district property its erection was beyond the scope of the authority of the park board as such under the statute heretofore quoted, and worked the legal consequences thus pleaded. The board had power to acquire land by purchase, gift, devise, condemnation, or otherwise, and we do not see why it could not lease land under these broad provisions. The further provision of the statute that where

the park commission has acquired legal title to the land it shall have power to sell and convey the same, itself implies that it is not necessary for the district to have legal title to such lands as it may have acquired. Considering the broad powers given to the board and the purposes at which the statute is aimed, it is unreasonable to say that the legislature intended that the board might not lease such lands as were necessary to effectuate those purposes. Surely if in the judgment of the board it was considered desirable and beneficial to afford the public an opportunity to engage in seasonal sports, it might do so. Surely it was within the power of the board to provide for winter sports such as tobogganing or skating, or for tennis or baseball in summer. Considering the broad provisions of the statute we can see no reason why the park board might not make provision by lease or license for grounds where these seasonal sports might be carried on. Reasons of practicality and economy are manifest why this might be done rather than that title to such grounds be acquired. So with respect to the allegation that the board wrongfully diverted public moneys to a purely private enterprise in thus erecting and maintaining the toboggan slide. This also is no more than a statement of a conclusion of law. It will not be presumed that the board acted beyond its powers and unlawfully, and that there was a wrongful diversion of public moneys. Presumptively the acts of the board were lawful and innocent and they will not be considered as otherwise unless the facts so establishing affirmatively appear. See subdivision 1, § 7936, Comp. Laws 1913; Holtan v. Beck, 20 N. D. 5, 125 N. W. 1048; Kadlec v. Pavik, 9 N. D. 278, 83 N. W. 5.

The order overruling the demurrers must be and it is reversed.

BURKE, BIRDZELL and CHRISTIANSON, JJ., concur.

BURR, J. I agree but do not express concurrence with interpretation of word "acquire."