Scott SHERMOEN, by and through his next friend, parent, and natural guardian, Dorothy Shermoen, Plaintiff and Appellant,

v.

Fred C. LINDSAY; the Park District of the City of Fargo, North Dakota; and Western Casualty and Surety Company, a corporation, Defendants and Respondents.

Civ. No. 8478.

Supreme Court of North Dakota.

Dec. 30, 1968.

Lanier, Knox & Shermoen, Fargo, attorneys for the plaintiff and appellant.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for defendants and respondents, Park District of City of Fargo, N.D., and Western Casualty and Surety Co.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendant and respondent, Fred C. Lindsay.

RAY R. FRIEDERICH, District Judge.

This is an appeal from two orders entered preliminary to trial by the District Court of Cass County. The first order granted a defense motion to strike certain allegations in the Plaintiff's Complaint, and the second dismissed the Complaint as to one of the defendants named in the action.

The facts for purposes of this appeal have, in part, been stipulated to by the parties through their respective attorneys. By this stipulation, it appears that on July 24, 1963, at approximately 8:00 P.M. the Plaintiff, Scott Shermoen, a boy of ten years of age, was swinging on a rope which had been tied to the limb of a tree adjacent to Sixth Street in the 800 Block, South Fargo, North Dakota. As the boy swung out over the street, a portion of the rope trailed behind him and was caught on an automobile being driven along Sixth Street by the Defendant Fred C. Lindsay. The boy fell to the street and sustained bodily injuries.

The tree from which the boy was swinging was on Hawthorne School Playground, used by the Fargo Park District for its summer supervised playground program. The rope had been tied to the limb by a playground supervisor of the Park District for a rope-climbing event in this program.

It is also agreed that the Park District is a duly organized and existing political subdivision, and the playground program was for the benefit of the general public and paid for with public funds. At the time of the injury, the Park District was insured under a general comprehensive liability policy issued by Western Casualty and Surety Company.

In the original action as commenced by the Plaintiff, negligence was alleged against the Defendant, Fred C. Lindsay, and the Park District. Both Defendants denied such negligence; alleged contributory negligence as an affirmative defense, with the Park District further alleging that if contributory negligence was not the sole proximate cause of the injuries claimed by the Plaintiff, the injury was caused by persons other than the Park District. Governmental immunity was not specifically alleged as a defense on the part of the Park District. A motion for summary judgment urged by the Park District on the ground of governmental immunity was denied by the District Court.

Subsequent to the decision on the motion for summary judgment, the Plaintiff was permitted to file an amended complaint in which Western Casualty and Surety Company, a foreign corporation, was named as a party to the action, with the amended complaint containing all the allegations of of the original complaint, except one additional paragraph, as follows:

"That at all times material hereto, the Defendant Park District had in existence and in full force and effect a policy of liability insurance with the Defendant Western Casualty and Surety Company of Fort Scott, Kansas, insuring said Defendant, Park District, against liability and damages for the injuries sustained by Scott Shermoen as hereinbefore alleged all in accordance with the provisions of § 40-43-07 NDCC; and that pursuant to said statute, the defense of governmental immunity is not available to the Defendant, Western Casualty and Surety Company."

To the Amended Complaint, the Park District interposed its Amended Answers specifically alleging the defense of governmental immunity. Western Casualty and Surety Company moved to strike the reference to insurance in the Amended Complaint, and to dismiss the complaint as against this defendant. Both motions were granted by the Trial Court in separate orders and the appeal is from these two orders.

At the time the alleged injury was sustained by the Plaintiff, § 40-43-07 of the North Dakota Century Code was the existing statute governing authority for the

procurement of liability insurance, and made reference to the defense of governmental immunity as it might be claimed by the political subdivision and the insurance carrier as follows:

40–43–07. Political Subdivisions Authorized to Carry Liability Insurance— Defense of governmental immunity not available to insurers.—Any political subdivision of the state may insure against claims of loss, damage, or injury against such political subdivision or any department, agency, or function, or officer, agent, or employee, of such subdivision. This section shall not deprive any political subdivision of the state of its right to claim governmental immunity, but such immunity shall not be available to the insurance carrier furnishing such insurance and all policies providing for such insurance shall contain a waiver of such defense. (S.L.1955, ch. 261, § 1; R.C. 1943, 1957 supp., § 44–0115).

Since the alleged injury and the filing of this appeal, the foregoing statute has been amended by the North Dakota Legislature at its 1965 and 1967 sessions. The Amendments are not pertinent to a determination in this action.

It is the Plaintiff's contention that by the order striking all reference to the existence of insurance in the Amended Complaint, the Court has precluded the Plaintiff from proving the existence of liability insurance, which in turn would prevent the application of § 40–43–07 NDCC. It is the Plaintiff's further claim that by dismissing the action against the Defendant, Western Casualty and Surety Company, the Court is permitting the insurance carrier to avail itself of the defense of governmental immunity on behalf of the political subdivision in complete contravention of the statute.

■ The Defendants, Park District and Western Casualty and Surety Company challenge the appealability of the two orders as not being within any of the subsections of § 28–27–02 NDCC under which appeals may be carried to this Court. If the orders fall within any of the subsections of this statute, it would be § 28–27–02(5) NDCC which provides as follows:

"What orders reviewable.—The following orders when made by the court may be carried to the supreme court:

" *      *      *      *      *      *

"5. An order which involves the merits of an action or some part thereof;

" *      *      *      *      *      *

In the case of In Re Fettig's Estate, 129 N.W.2d 823 (N.D.1964), the foregoing subsection is discussed at Page 827 with reference to an earlier case:

"In Bolton v. Donavan, 9 N.D. 575, 84 N.W. 357, this Court expanded upon the term 'merits' and held that the phrase 'involves the merits' must be so interpreted as to embrace orders which pass upon substantial legal rights of the suitor, whether such rights do or do not relate directly to the cause of action or subject matter in controversy."

See also Nord v. Koppang, 131 N.W.2d 617 (N.D.1964); Swiggum v. Valley Investment Co., 73 N.D. 422, 15 N.W.2d 862; Hauser v. Security Credit Co., 66 N.D. 399, 266 N.W. 104.

The orders under consideration in the foregoing cases were not held to be appealable, but neither were they determinative in the case. In other words, the orders were not decisive of the questions involved, but left them still pending before the Trial Court. To the same effect was the result in Nordenstrom v. Swedberg, 123 N.W.2d 285 (N.D.1963) and Ferguson v. Jensen, 76 N.D. 647, 38 N.W.2d 560.

The order of the Trial Court on each of the motions here, although an intermediate order, prevents either pleading or proving the existence of liability insurance in terms of § 40–43–07 NDCC. We believe an analogy exists to the holding in Granger v. Deaconess Hospital of Grand Forks, 138 N.W.2d 443 (N.D.1965) in that the portion stricken is not provable under the

remaining allegations of the Complaint and yet "involves the merits of an action or some part thereof." See also La Duke v. E. W. Wylie Co., 77 N.D. 592, 44 N.W.2d 204. The issues raised by the appeal will be considered.

The specifications of error as the same refer to the two separate orders of the Trial Court are related, and will be covered under a single heading. No attempt is being made at an exhaustive discussion of the American Doctrine of governmental immunity. There is such a conglomeration of case law, however, and such confusion on the subject that some general observations may be of help as a preface to the specific issues in the case.

Law is a viable science which during the history of our country has been able to adapt itself reasonably well to the needs and circumstances of the times. Where this is particularly apparent is in the field of immunity from tort liability. It was argued that the threat of tort liability might jeopardize the continued existence of the state and its political subdivisions, charitable institutions, and intra-family amity. In each of these three categories, immunity was deemed necessary in order to preserve a socially desirable service or condition. To accomplish this result a vast body of law has developed over the past years and is still tenaciously being preserved in many jurisdictions, notwithstanding the fact that the procurement of liability or indemnity insurance would seem to negate any justification which may exist for the concern, or completely destroy it. Defender v. City of McLaughlen, 228 F.Supp. 615 (D.C.S. D.); Coste v. City of Superior, 343 F.2d 100 (C.A.7 Wis.); Maffei v. Incorporated Town of Kemmerer, 80 Wyo. 33, 338 P.2d 808 (Wyo.1959) Rehearing denied 340 P.2d 759; Sayers v. School Dist. of Argentine & Deerfield, 366 Mich. 217, 114 N.W.2d 191, 60 A.L.R.2d 1198.

Governmental immunity from tort liability in the cited cases, among others, was preserved on the basis of three general classifications:

(1) The sovereign is immune from suit, which under our system of government would include the state and political subdivisions of the state who are considered to be representatives or agencies of the sovereign;

(2) The curious philosophy that it is more expedient that isolated individuals should suffer than that society in general be inconvenienced; and

(3) That from a practical view of public policy, governments and governmental agencies will perform their duties more efficiently and effectively if not jeopardized by the threat of tort liability.

The doctrine has been under attack in recent years, and is being abrogated in an increasing number of states either by legislative action or judicial decision. Some of the most forceful language condemning it can be found in the following cases: Thomas v. Broad Lands Community Consolidated School District, 348 Ill.App. 567, 109 N.E.2d 636, 640. Annotation, 75 A.L.R. 1196, Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961); Pierce v. Yakima Valley Memorial Hosp. Ass'n., 43 Wash.2d 162, 260 P.2d 765, 774 (1953); Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962); McAndrew v. Mularchuk, 33 N.J. 172, 162 A.2d 820, 832, 88 A.L.R.2d 1313 (1960).

The disfavor which the Courts have shown towards immunity from tort liability in general follows a pattern, in that frequently a reappraisal of the doctrine of charitable immunity and intra-family immunity is followed by a reappraisal of the doctrine of governmental immunity with many of the same arguments, both pro and con. This Court has only in recent years expressed its position on the doctrine of charitable immunity in Granger v. Deaconness Hospital of Grand Forks, supra, and on the subject of intra-family immunity in the case of Nuelle v. Wells, 154 N.W.2d 364 (N.D.1967).

The legislature in this state has deemed it necessary to enter into the field of governmental immunity by the enactment of Chapter 261, Session Laws 1955, (herein referred to as § 40–43–07 North Dakota Century Code). Legislative attempt to remedy the chaos and confusion which exists in this area of the law and to remedy at least in part the harsh effect of the doctrine is not without justification.

In enacting § 40–43–07 NDCC, the North Dakota Legislature has demonstrated its awareness of the undesirable features of governmental immunity. We are inclined to agree that it is manifestly unfair that an innocent victim of a tort should be without recourse when the tort is perpetrated by a governmental agency, employee or agent. Although inroads have been piece-meal in that two subsequent amendments have been made to this statute since its origin in 1955, in each instance, these amendments have resulted in diminishing the consequences of this doctrine.

We consider first the effect if any of liability insurance upon the continued existence of the defense of governmental immunity.

The first paragraph of the insurance contract between the Park District and the insurance carrier provides as follows:

"* * * The Western shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false, fraudulent; but The Western may make such investigation and settlement of any claim or suit as it deems expedient."

Section 40–43–07 NDCC provides:

"* * * but such immunity shall not be available to the insurance carrier furnishing such insurance and all policies providing for such insurance shall contain a waiver of such defense."

■ What construction must be placed upon the insurance contract in the light of the statutory directive? We read the insurance contract as controlled by the statutory language to mean that the insurer shall defend against any claims for bodily injury brought against the Defendant Park District, but that such insurer cannot and will not avail itself of the defense of governmental immunity ordinarily available to the Park District. The insurer has contracted to be in control of the defense or settlement of the claim in behalf of the insured, and to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury.

The statute made the procurement of insurance permissive on the part of the political subdivision. The political subdivision need not enlarge its scope of liability unless it elects to do so by insurance. The insurance carrier need not elect to insure against claims of loss, damage, or injury, unless it is willing to do so in the absence of and upon waiver of the defense of governmental immunity.

■ It is important to note that the statute does not read: "The procurement of insurance shall not deprive * * *" but rather, *"This section* shall not deprive any political subdivision of the state of its right to claim governmental immunity * * *." We believe the legislature included the words *"This section"* as a precaution against any interpretation that the enactment of § 40–43–07 NDCC might imply the preclusion of a political subdivision raising the defense of governmental immunity whether protected by liability insurance or not. It does not afford the political subdivision with liability insurance the right to exercise the defense of governmental immunity whenever it should elect to do so, and waive the defense whenever it chooses to do so. Schoening v. United States Aviation Underwriters, Inc., 265 Minn. 119, 120 N.W.2d 859; Flowers v. Board of Commerce of Venderburgh County, 240 Ind. 668, 168 N.E.2d 224, overruling Hummer v. School City of Hartford City, 124 Ind. App. 30, 112 N.E.2d 891 (Ind.).

As was pointed out earlier, the defense of governmental immunity raised by the insurer makes it imperative that the existence of liability insurance be alleged in the amended complaint.

■ Such an allegation cannot be prejudicial to the defendant Park District, however, in view of our law which prohibits, during the course of trial, any reference to pleadings which may be prejudicial to the adverse party. Reuter v. Olson, 79 N.D. 834, 59 N.W.2d 830; Hoffer v. Burd, 78 N. D. 278, 49 N.W.2d 282; Peterson v. Bober, 79 N.D. 300, 56 N.W.2d 331.

■■ Our law equally prohibits any reference to insurance during the course of trial, where the insurance carrier is not a party to the action. Bischoff v. Koenig, 100 N.W.2d 159 (N.D.1959). This is a proper subject for pre-trial procedure before the Court. Once the existence of insurance is established, it is for the Court to rule on the defense of governmental immunity. Spielman v. State, 91 N.W.2d 627, 629 (N.D.1958).

■ That portion of the Trial Court's order striking the allegation of liability insurance from the Plaintiff's amended Complaint is accordingly reversed. For reasons hereinafter explained the portion of the order striking the name of Western Casualty and Surety Company, a corporation, from the title of the action and a portion of Paragraph II of the amended Complaint referring to this defendant is affirmed.

■ We consider next the order of the Trial Court dismissing the action against Western Casualty and Surety Company.

There is a general reluctance among Courts to permit direct actions by an injured party against the insurer. Courts seem to be fearful of undue jury liberality in a negligence suit where the carrier is joined as a defendant. Aside from this general reluctance, however, there are other more specific reasons why such an action cannot be permitted in this case and why the order of the Trial Court dismissing the action against the insurer should be sustained.

Unless there is implied language in the statute authorizing a direct action against the insurer, as claimed by the Plaintiff, such an action would have to be based upon the premise that the insurance contract between the insurer and the Park District is for the benefit of third parties. There is some basis in the argument that the insurance contract was not entered into for the protection of the political subdivision since it already enjoys immunity from tort liability and therefore must be for the benefit of third parties. Courts, however, have restricted the third party beneficiary theory to cases brought under a statute providing for compulsory insurance. The rule is best expressed at 20 A.L.R. 1131:

"Where the policy provisions were clearly against the joinder of the insured and the insurer in the same action, and no statutory provision existed inconsistent with such provision, the right to join the insurer and the insured in the same action has been denied to the injured person." See James v. Young, 77 N.D. 451, 43 N. W.2d 692, 20 A.L.R.2d 1097 (N.D.1950).

In the absence of statutory language to the contrary, recognition must then be given to the contract between the insured and the insurer. In this respect, the contract of insurance between The Western and the Defendant Park District is not unique. It contains the conventional "no action clause" which provides as follows:

"Action Against The Western: No action shall lie against The Western unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and The Western.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join The Western as a party to any action against the insured to determine the insured's liability, nor shall The Western be impleaded by the insured or his legal representative."

Only a so-called direct-action statute, which would permit suit directly against the insurer notwithstanding the "no action clause," would permit the joinder of Western Casualty and Surety Company, as the plaintiff has attempted in this case. North Dakota has no such direct-action statute, and our interpretation of § 40–43–07 does not authorize such actions.

The dismissal of Western Casualty and Surety Company as a party defendant, as herein affirmed, in no way implies that an ultimate responsibility may not devolve upon this company should judgment in favor of the plaintiff and against the defendant Park District be subsequently entered. The basis of the dismissal of the action against the insurance company is that the action against it, at this stage of the proceedings, is premature.

The case is remanded to the District Court of Cass County for further proceedings consistent with the holding herein.

STRUTZ, ERICKSTAD, and KNUDSON, JJ., concur.

PAULSON, J., deeming himself disqualified, did not participate; Honorable RAY R. FRIEDERICH, one of the Judges of the Second Judicial District, sitting in his stead.

TEIGEN, Chief Justice (dissenting).

The plaintiff's action sounds in tort and after the amendment of the complaint the action is directed against the defendant Lindsay, the Park District of the City of Fargo, and Western Casualty and Surety Company. Lindsay does not figure in this appeal. The Park District is a political subdivision which is insured and Western Casualty and Surety Company is the insurer. The trial court, in two orders, dismissed the plaintiff's action against the insurer, Western, and directed the removal of the insurer's name from the title and body of the amended complaint. It also ordered that there be stricken from the amended complaint a paragraph alleging that the Park District is insured by Western. This appeal is from both orders.

The majority of this court has reversed that portion of the trial court's order, striking that paragraph of the amended complaint which alleges that the Park District is insured but has sustained the trial court in directing removal of Western's name from the title and body of the amended complaint and also in dismissing the plaintiff's action against Western. Thus, in accordance with the majority opinion, the action lies against the political subdivision but not its insurer and, in addition, holds that the insurer, Western, may not defend the suit against the Park District on the ground of governmental immunity. The majority has also advised that in the trial of the suit it would be improper for the trial court, in its instructions, to allude to the fact that the political subdivision is insured.

I concur with the result of the majority in reversing that part of the order appealed from, striking from the complaint the allegation that the Park District was insured. However, I feel the trial court also erred when it dismissed the action against the insured and directed the removal of its name from the pleadings. I am of the opinion that the Legislature, in enacting Chapter 261 of the Session Laws of 1955, intended to authorize a political subdivision to purchase direct-action liability insurance.

The statute (40–43–07, N.D.C.C.) at the time of issue in this action provided: "Any

political subdivision of the state may insure against claims of loss, damage, or injury against such political subdivision or any department, agency, or function, or officer, agent, or employee, of such subdivision. * * *" It is noted from the language employed in this statute that it authorizes a political subdivision to insure against "claims of loss, damage, or injury * * *". It does not authorize a political subdivision to insure against *liability*. A claim is a demand or assertion. It does not adjudicate or determine the right of the claimant nor does it impose liability upon the person against whom it is asserted. Under an indemnity policy the insured must have suffered an actual money loss before the insurer is liable, whereas under a liability policy the cause of action accrues when the liability attaches. 7 Appleman on Insurance Law and Practice, Sec. 4261. Therefore, it appears to me that the language of the statute, "insure against claims," indicates a liability policy, not an indemnity policy. The interpretation of legislative intent is in harmony with the first part of the next sentence of the section, which provides: "This section shall not deprive any political subdivision of the state of its right to claim governmental immunity, * * *" which protects a political subdivision from liability and resulting money loss. There is no conflict in these two provisions in the statute. It was well established by case law before the adoption of Section 40–43–07 (enacted as Chapter 261 of the Session Laws of 1955) that the State and its political subdivisions, in the absence of constitutional or statutory waiver of immunity, are not liable for their torts. Vail v. Town of Amenia, 4 N.D. 239, 59 N.W. 1092; Hadler v. North West Agricultural, Live Stock and Fair Ass'n, 61 N.D. 647, 239 N.W. 736; Holgerson v. City of Devils Lake, 63 N.D. 155, 246 N.W. 641; Fetzer v. Minot Park District (N.D.) 138 N.W.2d 601. Thus, the Legislature, in the language quoted above, by the enactment of this section, reaffirmed case law. It authorized a political subdivision to insure against "claims" as opposed to liability because the political sub-

division is immune from liability in cases where it may invoke the defense of governmental immunity. The statute continues from the end of the above quote and states:

"* * * but such immunity shall not be available to the insurance carrier furnishing such insurance and all policies providing for such insurance shall contain a waiver of such defense."

The only time that an insurance carrier has occasion to invoke the defense of immunity is if a suit were brought against it. Obviously, in order to assert or have "available" any defense, the "insurance carrier" would have to be a party defendant.

The fact that the policy provides the insurer shall defend the suit does not make the insurer a party to the suit. In defending the suit it is entitled, on behalf of the insured, to raise all the defenses that the insured has available to it, were it defending the suit.

The majority has deprived the Park Board of the defense of governmental immunity because it is insured under a policy which provides the insurer shall assume the duty of defending or settling the plaintiff's claim against the Park Board. This holding may result in judgments against political subdivisions in excess of policy limits and may require the political subdivision to pay judgments before being entitled to indemnity from its insurer or, if the insurer becomes insolvent, to absorb the loss. It flies squarely in the face of the statute which has preserved the defense of governmental immunity for the political subdivision in clear, unambiguous language. The insurer, in assuming the defense for its insured, is deemed the agent of the insured and must have available to it all the defenses of its principal, and because ordinarily in direct-action liability policies an insurer also has available to it all the defenses of its insured the Legislature provided for the exception. The clear import of this language to me is that the insurer may be sued directly by a third-party claim-

ant without first establishing the liability of the insured. The statute reaffirms the defense of governmental immunity on behalf of the insured political subdivision in a suit against it and waives it as a defense in a suit against its insurer.

In 1967, the Legislature, by the enactment of Chapter 244 of the 1967 Session Laws, amended and reenacted Section 40–43–07, North Dakota Century Code, and waives governmental immunity in a suit against the insured political subdivision to the extent of its insurance coverage and policy limits. This statute provides as follows:

"Political subdivisions authorized to carry liability insurance—Waiver of immunity to extent only of insurance purchased.—

"1. Any political subdivision of the state may insure against claims of loss, damage, or injury against such political subdivision or any department, agency, or function, or officer, agent, or employee, of such subdivision.

"2. If a political subdivision insures against a claim, then the political subdivision waives its immunity to suit only to the extent of allowing a determination of liability to the extent of the waiver of the immunity against liability described in subsection 3.

"3. If a political subdivision insures against a claim, then the political subdivision waives its immunity against liability only to the types of its insurance coverage and only to the extent of the policy limits of such coverage.

"4. If a dispute exists concerning the amount or nature of the insurance coverage, the dispute shall be tried separately before the main trial determining the claims and damages of the claimant.

"5. This statute confers no right for a claimant to sue the insurer directly."

It is noted in paragraphs 2 and 3 of this section that the Legislature has now specifically provided that the insured political subdivision waives its immunity to suit to the extent of allowing a determination of liability against it within its insurance coverage and the policy limits. This statute also affirmatively provides that it "confers no right for a claimant to sue the insurer directly." These are very material changes in the original statute and must be presumed to indicate a legislative intent to change the law, not to interpret what it was originally intended to provide. Walker v. Weilenman, N.D., 143 N.W.2d 689; Jager v. Grommesh, N.D., 77 N.W.2d 873.

It appears to me that the court, by its majority opinion, has accomplished by interpretation of the prior statute, the same objective as the Legislature accomplished by its amendment, but without the limitations prescribed in the amendment. It is true, as indicated by the majority, that the Legislature has indicated an intention to partially abrogate by waiver the doctrine of governmental immunity. However, I do not think such an intention was indicated until the passage of the 1967 Act. My reasoning on this is affirmed by a former opinion of this court. See Fetzer v. Minot Park District, N.D., 138 N.W.2d 601 (November 29, 1965). In that case we held that a park district was entitled to governmental immunity in a negligence case. In discussing the question, we stated in part, as follows:

"But the strongest argument for governmental immunity is that the Legislature of this State, as recently as the 1965 Session, has recognized the doctrine. Chapter 266 of the 1965 Session Laws, which amends and reenacts Section 40–43–07 of the North Dakota Century Code, provides for motor vehicle liability insurance for the State and its municipal subdivisions. After providing for such

insurance, the Legislative Assembly further provided:

'This section shall not deprive any political subdivision of the state of its right to claim governmental immunity or immunity of any employee but such immunity shall not be available to the insurance carrier furnishing such insurance * * *.'

"The courts cannot legislate, regardless of how much we might desire to do so. Therefore, regardless of how worthy a claim against a municipal corporation might be, we cannot assume the functions of the Legislative Assembly. Our power is limited to passing on laws enacted by the Legislature, and, if the Legislature fails to act, we cannot change the law by judicial decision. The question here presented is one that should be addressed to the Legislative Assembly, and not to the courts. As was said by the Honorable A. M. Christianson, in his concurring opinion to Anderson v. Board of Education of City of Fargo, 49 N.D. 181, 190 N.W. 807:

'If the rule is wrong, the Legislature has ample power to change it. It is the duty of the courts to enforce the law as it exists.' "

It appears to me that the majority has now adopted a view which is contrary to that adopted in *Fetzer,* supra. In that case we affirmed a summary judgment of the dismissal of a tort claim against the Park District on the ground that the Park District was entitled to governmental immunity.

Many States have enacted statutes enabling an injured person or a person whose property is damaged to proceed directly against the liability insurer, and such statutes have very generally been upheld. It has also been held that they are within the police power of the State and do not violate the due process clause, the equal protection clause, or the contract impairment clause of the Federal Constitution.

"In many states, statutes have been enacted enabling an injured person, or person whose property is damaged, to proceed directly against the liability insurer; * * *. While these statutes vary greatly in detail, all of them are alike in that they permit suit directly against the insurer by the injured person. In such respect these statutes are deemed reasonable in their purpose and effect, and their constitutionality has very generally been upheld. They are within the police power of the state, and do not violate the due process clause, the equal protection clause, or the contract impairment clause of the Federal constitution." 29A Am.Jur. Insurance, Sec. 1486.

See also 46 C.J.S. Insurance § 1191(1), p. 114, wherein it is stated:

"Under statutes in a number of jurisdictions which expressly provide for direct liability of insurer to the injured person or which require insurer to include in the policy a provision for direct liability to the person injured, which statutes have been held to be valid, an injured person may sue to have the insurance money applied to his claim or judgment by an action or proceeding directly against insurer. Such a statute has for its purpose the protection of persons who may be injured, and in effect it makes the injured person a third party beneficiary of the policy to the extent that the statute gives him a remedy. 46 C.J.S. Insurance, § 1191(1), p. 114.

See also 8 Appleman on Insurance Law and Practice, Section 4833.

We held in James v. Young, 77 N.D. 451, 43 N.W.2d 692, 20 A.L.R.2d 1086, that a city ordinance requiring proprietors of licensed taxicab lines to file with the city auditor insurance policies indemnifying persons using such lines and the general public against personal injuries for which taxicab proprietors are legally liable, allows the insurer to be made a party defendant together with the insured in an action for damages on the ground that the ordinance makes

the insurer directly liable to the injured person on proof of the insured's liability. I recognize that this case may be distinguished from the present case on the basis that the ordinance required the insurance and it is cited only for the purpose of pointing out that this Court has allowed a direct suit by a third party against an insurer.

The fact that the policy is limited to indemnity does not take it out of the provisions of Section 40–43–07, North Dakota Century Code. All polices or contracts of insurance must be construed in the light of the statute by which they are governed. The statute becomes a part of the contract to be construed therewith. Montgomery v. Whitbeck, 12 N.D. 385, 96 N.W. 327; Bach v. North Dakota Mutual Fire Insurance Company of North Dakota, 56 N.D. 319, 217 N.W. 273.

"A statute enabling the injured party to recover from insurer of the party causing the injury must be read into the insurance contract, and it cannot be modified or rendered ineffective by provisions of the contract. * * *" 46 C.J.S. Insurance, § 1191(2), p. 116.

I also believe the "no action" clause of the policy which prohibits direct action against the insurer until the amount of the insured's obligation has been determined is void and of no effect. The policy must be construed in the light of the statute and not in the light of the terms of the policy.

It is my belief that it was the intent of the Legislature, in enacting Chapter 261 of the Session Laws of 1955 (40–43–07, N.D.C.C.) to provide that political subdivisions could purchase liability insurance and that it authorized a direct proceeding against the insurance company by the claimant as a third-party beneficiary.

For the reasons herein stated I would reverse both orders of the trial court.